Docket No. 100383.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

PROMILA DAMAN PAUL, as Trustee for the S. Daman Paul, M.D., and P. Daman Paul, M.D., Ltd. Pension Plan and Trust, Appellee, v.
GERALD ADELMAN & ASSOCIATES, LTD., *et al.*, Appellants.

*Opinion filed October 19, 2006.*


JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Chief Justice Thomas and Justices Freeman and Burke took no part in the decision.

**OPINION**

Plaintiff, Promila Daman Paul, as trustee for the S. Daman Paul, M.D., and P. Daman Paul, M.D., Ltd. Pension Plan and Trust (the joint pension plan), filed two petitions in the circuit court of Cook County seeking relief from judgment pursuant to section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2002)). Plaintiff sought to vacate two orders dismissing her causes of action for want of prosecution (DWP) against several defendants who provided administrative, actuarial, insurance, and other services to the joint pension plan. The circuit court granted plaintiff's petitions, thus reinstating her cases, and consolidated the cases for further action. Defendants appealed. The appellate court affirmed. Nos. 1–04–0189, 1–04–0214 cons. (unpublished order under Supreme Court Rule 23).

We allowed defendants' petition for leave to appeal. See 177 Ill. 2d R. 315; 155 Ill. 2d R. 304(b)(3). For the reasons discussed below, we affirm in part and vacate in part the judgment of the appellate court, and remand the matter to the circuit court for further proceedings.

BACKGROUND

In 1971, plaintiff, a physician, married Shashi Daman Paul, also a physician. The couple operated their medical practice as an Illinois corporation known as S. Daman Paul, M.D., and P. Daman Paul, M.D., Ltd. In 1977, the corporation adopted the joint pension plan, under which plaintiff and Shashi were the plan trustees. At some point prior to 1991, plaintiff and Shashi moved to Indiana. In January 1991, plaintiff initiated divorce proceedings in Jasper County, Indiana.

On January 18, 1995, while the divorce action was pending, plaintiff, as a trustee of the joint pension plan, filed a multicount complaint in the circuit court of Cook County against defendants, Gerald Adelman & Associates, Ltd. (Adelman), and Federal Kemper Life Assurance Company (Kemper) (the Adelman case). According to the complaint, the joint pension plan engaged Adelman, an Illinois insurance agency, to provide services with regard to the life insurance assets of the plan, including a $1 million Kemper policy on the life of Shashi. The

complaint alleged that in January 1990, March 1991, and June 1991, Shashi directed Adelman to obtain the maximum cash loans possible on the Kemper policy. The loans, which totaled almost $140,000, were allegedly made for Shashi's own benefit without plaintiff's knowledge or consent. Plaintiff claimed that Shashi forged her signature on loan request forms; Adelman falsely witnessed the forged signature; and Kemper failed to verify plaintiff's signature before making the loans. The complaint further alleged that the $1 million Kemper policy was fraudulently transferred from the joint pension plan to Shashi's own pension plan–the S. Daman Paul, M.D., P.C. Pension Plan and Trust. Plaintiff sought damages for breach of contract, breach of fiduciary duty, fraud, negligence, conversion, and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)).

Kemper attempted to have the Adelman case removed to federal court. On April 19, 1995, the district court for the Northern District of Illinois remanded the cause to the circuit court of Cook County. After remand, Kemper filed, among other pleadings, a counterclaim against Adelman and a third-party action against Shashi.

On May 22, 1995, plaintiff, in her capacity as a trustee of the joint pension plan, filed a second complaint in the circuit court of Cook County, this one against defendants Gary R. Mann, Gary R. Mann & Associates, Inc. (collectively, Mann), and Engler, Zoghlin, Mann, Ltd. (EZM) (the Mann case). The complaint identified EZM as an Illinois pension actuarial firm that was retained in 1977 to provide services in connection with the creation and administration of the joint pension plan. Gary R. Mann was named as the individual at EZM principally responsible for plan administration. Gary R. Mann & Associates, Inc., was the successor firm to EZM.

According to the allegations of the complaint, in early 1991, Shashi began an independent medical practice in Indiana, incorporated under the name S. Daman Paul, M.D., P.C., and retained the services of EZM to create and administer a pension plan for his practice, purportedly to be funded with assets from the joint pension plan. The complaint alleged that

EZM and Mann prepared certain corporate resolutions, which Shashi executed, that changed the name of the joint pension plan to the S. Daman Paul, M.D., P.C. Pension Plan and Trust, and removed plaintiff as a trustee of the joint pension plan, thus enabling Shashi to transfer assets from the joint pension plan to his individual pension plan. Plaintiff sought damages for breach of contract, breach of fiduciary duty, fraud, negligence, conversion, and violations of the Consumer Fraud Act.

In January 1996, plaintiff filed a petition for personal bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana. The Adelman and Mann cases became part of the bankruptcy estate under the control of the trustee in bankruptcy. Although plaintiff initially represented herself in the bankruptcy court, in June 1997, she retained attorney Thomas Rosenwein, who had represented plaintiff in the Adelman and Mann cases. Rosenwein represented plaintiff in the bankruptcy court until mid-May 2001, when she could no longer afford legal fees.

In light of the ongoing bankruptcy proceedings, on February 18, 1998, the Cook County circuit court placed the Adelman case on the court's bankruptcy calender. Similarly, on April 16, 1998, the circuit court placed the Mann case on the bankruptcy calender.

A printout of the circuit court activity on the Adelman case indicates that three years after the case was placed on the bankruptcy calender, the case was set on the court's October 10, 2001, status call. At that call, the circuit court removed the Adelman case from the bankruptcy calendar, renumbered the case, and because no one appeared for plaintiff, entered a DWP order. The following day, the circuit court entered a DWP order as to the Mann case. Although a printout of the circuit court activity in the Mann case does not appear in the record, presumably the Mann case was also set on the court's status call. At the time the DWP orders were entered, plaintiff was no longer represented by counsel.

On March 28, 2003, 15 months after the Cook County circuit court dismissed plaintiff's cases, the United States bankruptcy court entered an order stating that the Adelman case and the Mann case "are properly claimed as exempt and

are no longer property of [the] Debtor's estate" and, accordingly, are "abandoned back to the Debtor."

Six months later, on September 29, 2003, plaintiff filed a section 2–1401 petition seeking to vacate the circuit court's DWP order as to the Adelman case. The plaintiff followed with a section 2–1401 petition as to the Mann case on October 8, 2003. Plaintiff supported her petitions with her own affidavit, as well as the affidavit of attorney Rosenwein, who prepared the section 2–1401 petitions.

According to the petitions and affidavits, the trustee in bankruptcy would not agree to allow plaintiff to proceed with the Adelman and Mann cases, nor would the trustee himself pursue the litigation on behalf of the bankruptcy estate. When the trustee finally abandoned the Adelman and Mann cases back to plaintiff and the court entered an order to that effect on March 28, 2003, plaintiff immediately contacted Rosenwein and provided him a copy of the order. In early April 2003, Rosenwein checked the court files in Cook County and learned for the first time that both cases had been dismissed 18 months earlier. Plaintiff and Rosenwein averred that neither had received notice that the cases had been dismissed.

Rosenwein also averred that, at the time plaintiff contacted him about pursuing the Adelman and Mann cases again, plaintiff's files were being held by the Peterson & Ross Dissolution Committee–the entity formed to wind up the affairs of Peterson & Ross which was dissolved in February 2003. Rosenwein's affidavit explained that he had joined Peterson & Ross in April 2000, where he continued to represent plaintiff in the bankruptcy court until she was unable to afford legal fees. Rosenwein's affidavit also states that he left Peterson & Ross in January 2003 and joined another firm, but plaintiff's files remained with Peterson & Ross because plaintiff had incurred a large debt for legal services. According to Rosenwein, after extensive discussion and negotiation, the Peterson & Ross Dissolution Committee finally agreed, in a document dated August 31, 2003, to release plaintiff's files.

Plaintiff maintained that she could not pursue the cases in her own right until receipt of the March 28, 2003, order of the bankruptcy court releasing the causes of action back to her,

and until she had reached an agreement on August 31, 2003, with the Peterson & Ross Dissolution Committee to release her files. She thus maintained that she exercised due diligence in prosecuting her claims and in filing her section 2–1401 petitions.

Plaintiff also maintained that she had a meritorious claim against defendants as evinced, in part, by an Illinois Department of Insurance investigation into the activities of defendant Gerald Adelman in connection with the loans Shashi made against the joint pension plan assets. As a result of the investigation, the department requested Adelman to pay a civil forfeiture.

In response to plaintiff's section 2–1401 petitions, defendants argued that plaintiff's failure to monitor her cases and learn of the dismissal orders until 18 months after the orders were entered does not justify reinstatement of her cases. Defendants also argued that plaintiff failed to establish due diligence in pursuing relief under section 2–1401 where the undisputed facts establish that she waited six months after learning the cases had been dismissed before filing her petitions. Certain defendants also argued that plaintiff failed to establish the existence of a meritorious claim; plaintiff had no damages because she had already received half of the pension plan assets pursuant to the order of the Indiana divorce court; plaintiff lacked standing; and plaintiff's claims were preempted by the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (2000)).

After argument, but without an evidentiary hearing, the circuit court granted plaintiff's petitions, stating: "While I very seldom give [section 2–]1401 petitions, I don't think I've ever given one, in this case I find that based on all the circumstances that there was due diligence and, therefore, the motion to vacate the DWP is going to be granted." The circuit court consolidated the Adelman and Mann cases, and reinstated Kemper's counterclaim against Adelman and Kemper's third-party action against Shashi.

Defendants appealed, arguing that the circuit court abused its discretion in granting plaintiff's petitions. The appellate court, in a consolidated appeal, rejected defendants'

arguments and affirmed the judgment of the circuit court vacating the dismissal orders. Nos. 1–04–0189, 1–04–0214 cons. (unpublished order under Supreme Court Rule 23). This appeal followed.

ANALYSIS

I

Section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2002)) establishes a comprehensive procedure by which final orders and judgments may be vacated or modified more than 30 days after their entry. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003); *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 496 (1998). Although a section 2–1401 petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry (*People v. Haynes*, 192 Ill. 2d 437, 464 (2000)), a section 2–1401 petition may also be used to challenge a purportedly defective judgment for legal reasons (*People v. Lawton*, 212 Ill. 2d 285, 297 (2004)).

A proceeding under section 2–1401 is initiated by the filing of a petition "supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2–1401(b) (West 2002). Generally, the petition must set forth allegations supporting the existence of a meritorious claim or defense; due diligence in presenting the claim or defense to the circuit court in the original action; and due diligence in filing the section 2–1401 petition. *People v. Coleman*, 206 Ill. 2d 261, 289 (2002); *S.C. Vaughan Oil*, 181 Ill. 2d at 496. With limited exception not relevant here, the petition "must be filed not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2–1401(c) (West 2002). "The quantum of proof necessary to sustain a section 2–1401 petition is a preponderance of the evidence." *Smith v. Airoom*, 114 Ill. 2d 209, 221 (1986).

"One of the guiding principles *** in the administration of section 2–1401 relief is that the petition invokes the equitable powers of the circuit court ***." *Airoom*, 114 Ill. 2d at 225. The power to set aside a judgment, and thus allow a litigant to have

his or her day in court, " 'is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and [for the] furtherance of justice.' " *Airoom*, 114 Ill. 2d at 225 (quoting *Diner's Club, Inc. v. Gronwald*, 43 Ill. App. 3d 164, 168 (1976), and *Spencer v. American United Cab Ass'n*, 59 Ill. App. 2d 165, 172 (1965)); see also *Lawton*, 212 Ill. 2d at 298 ("Relief should be granted under section 2–1401 when necessary to achieve justice"). Accordingly, "[w]hether a section 2–1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented." *Airoom*, 114 Ill. 2d at 221; see also *George F. Mueller & Sons, Inc. v. Ostrowski*, 19 Ill. App. 3d 973, 977 (1974) ("the court may exercise its discretion in any manner dictated by the equities of the cause").

As acknowledged and applied in a long line of cases from this court, the disposition of a petition seeking relief from judgment under section 2–1401 (or its statutory predecessors) will be disturbed on review only if the trial court abused its discretion. *E.g.*, *Pinkonsly*, 207 Ill. 2d at 562; *Coleman*, 206 Ill. 2d at 289; *People v. Sanchez*, 131 Ill. 2d 417, 420 (1989); *Kaput v. Hoey*, 124 Ill. 2d 370, 378 (1988); *Airoom*, 114 Ill. 2d at 221; *Diacou v. Palos State Bank*, 65 Ill. 2d 304, 313 (1976); *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 610 (1963). The appellate court in the present case applied this standard. Nos. 1–04–0189, 1–04–0214 cons. (unpublished order under Supreme Court Rule 23).

Defendants argue, however, that where the underlying facts relevant to the circuit court's ruling on the section 2–1401 petition are not in dispute, and no credibility determinations are at issue, the court's ruling should be reviewed *de novo*. See D. Simko, *Updating the Standard of Review for Petitions to Vacate Final Judgments*, 86 Ill. B.J. 34 (1998). As plaintiff notes, defendants failed to make this argument in the appellate court. In fact, the Adelman and Kemper defendants expressly identified the relevant standard of review as abuse of discretion, citing this court's decision in *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 206 (1993) ("On appeal from a disposition on a petition for section 2–1401 relief, the standard applied by reviewing courts is whether the trial judge abused

his discretion," citing *Airoom*, 114 Ill. 2d at 221). The Mann defendants also expressly identified the standard of review as abuse of discretion, citing *Kulhavy v. Burlington Northern Santa Fe R.R.*, 337 Ill. App. 3d 510, 516 (2003) ("decision whether to grant or deny a section 2–1401 petition is within the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion," citing *Airoom*, 114 Ill. 2d at 221).

Plaintiff argues that defendants are estopped, pursuant to the invited-error doctrine, from now changing their position and claiming error by the appellate court. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) ("Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented"). Defendants counter that their change in position was prompted by this court's opinion in *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371 (2005). According to defendants, *Sperry* applied a *de novo* standard of review to the trial court's grant of section 2–1401 relief. Defendants argue that because *Sperry* was filed 22 days after the appellate court decision in this case, they did not have the option of requesting rehearing under the *Sperry* standard of review. See 155 Ill. 2d R. 367(a) ("petition for rehearing may be filed within 21 days after the filing of the judgment" in the reviewing court). Defendants contend that clarification of the standard is thus warranted.

Although we agree with plaintiff that the invited-error doctrine precludes defendants from taking a position in this court contrary to the position they took in the appellate court, to the extent defendants' change in position rests on our opinion in *Sperry*, we will consider defendants' argument that *de novo* review applies to this case.

*Sperry* involved a suit by Ford Motor Credit Company (Ford Credit) for the alleged breach of a motor vehicle lease by the defendant. The defendant filed a counterclaim alleging, *inter alia*, that Ford Credit violated the Consumer Fraud Act. The trial court directed a verdict against the defendant on his consumer fraud claim. Ford Credit later filed a petition for statutory attorney fees. See 815 ILCS 505/10a(c) (West 2000). The trial court awarded fees of over $31,000.

Twenty-one months later, the defendant filed a petition under section 2–1401(f) (735 ILCS 5/2–1401(f) (West 2000)), seeking to vacate the fee award. The defendant asserted that the fees were improper because the law firms representing Ford Credit were not registered as professional service corporations pursuant to Supreme Court Rule 721(c) (166 Ill. 2d R. 721(c)). Based on the violation of Rule 721, the trial court found the order for attorney fees was void *ab initio* and vacated the order. The appellate court affirmed (*Ford Motor Credit Corp. v. Sperry*, 344 Ill. App. 3d 1068 (2003)), and Ford Credit appealed to this court.

We identified the issue and the applicable standard of review as follows:

> "At issue in this appeal is whether a law firm's failure to register as a professional service corporation with this court, pursuant to the requirement set forth in our Rule 721(c), renders the legal services provided by that law firm the unauthorized practice of law, nullifies the proceedings in which the firm participated, and causes the resulting judgments of such proceedings to be void. Our review of this issue is *de novo*." *Sperry*, 214 Ill. 2d at 378-79.

The *Sperry* opinion did not signal a departure from the abuse-of-discretion standard Illinois courts have historically applied on review of the disposition of a section 2–1401 petition. The propriety of the grant of section 2–1401 relief in *Sperry* was dependent on the legal effect of a violation of one of this court's own rules. In addition, the rule at issue–Rule 721–relates to the practice of law in this state–an area which this court has the inherent authority to regulate. *Sperry*, 214 Ill. 2d at 382-83. Moreover, the petition filed in *Sperry* sought relief from a void judgment pursuant to section 2–1401(f), to which "the general rules pertaining to petitions filed under section 2–1401–that they must be brought within two years of the order of judgment, that the petitioner must allege a meritorious defense to the original action, and that the petitioner must show that the petition was brought with due diligence–do not apply." *Sperry*, 214 Ill. 2d at 379. Thus, the trial court in *Sperry* was not called upon to weigh the equities of granting or denying relief. Rather,

once the trial court decided the purely legal issue of the effect of the law firms' violations of Rule 721 against the firms, the court's grant of relief to petitioner Sperry followed as a matter of course because the attorney fee order was deemed void.

*Sperry* thus stands for the proposition that where the success of a section 2–1401(f) petition is dependent entirely on the interpretation of one of this court's rules, that legal issue will be reviewed *de novo*. *Sperry* does not call into question or otherwise inject uncertainty into what is a well-settled principle: a section 2–1401 ruling ordinarily will be reviewed for an abuse of discretion.

Although abuse-of-discretion review is the most deferential standard of review available (*People v. Coleman*, 183 Ill. 2d 366, 387 (1998)), we reject defendants' argument that it affords no meaningful review and amounts to "rubberstamping" the lower courts' rulings. In reviewing discretionary rulings by the trial court, an appeals court " 'must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion.' " *People v. Ortega*, 209 Ill. 2d 354, 360 (2004), quoting *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993). "[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts," and a reviewing court "must consider both the legal adequacy of [the] way the trial court reached its result as well as whether the result is within the bounds of reason." *Ortega*, 209 Ill. 2d at 360. Such review is not mere rubberstamping.

With these principles in mind, we consider the issues raised in this appeal.

## II

Defendants first argue that the circuit court erred in granting plaintiff relief because plaintiff did not demonstrate due diligence in presenting her section 2–1401 petitions. Defendants note that plaintiff filed her petitions six months after learning of the dismissals. Citing *European Tanspa, Inc. v. Shrader*, 242 Ill. App. 3d 103 (1993), *Cooper v. United Development Co.*, 122 Ill. App. 3d 850 (1984), and *Elmwood Ford Motors, Inc. v. Mardegan*, 42 Ill. App. 2d 342 (1963),

defendants maintain that a six-month delay cannot constitute due diligence as a matter of law. We disagree.

No bright-line rule exists for judging whether a petitioner has acted diligently. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances. See *Airoom*, 114 Ill. 2d at 222. Thus, a six-month delay in requesting section 2–1401 relief does not, *ipso facto*, demonstrate a fatal lack of diligence. The appellate court opinions on which defendants rely do not persuade us otherwise. Indeed, in each case cited by defendants, the appellate court considered not simply the length of the delay in filing the petition for relief from judgment, but also the circumstances attendant to such delay.

In *European Tanspa*, the appellate court observed that the defendants had actual notice of the default judgment the same day it was entered, but did not attempt to vacate the judgment at that time, instead electing to " 'see what comes about.' " *European Tanspa*, 242 Ill. App 3d at 108. The court further observed that although the defendants appeared at a hearing more than 60 days later on the plaintiff's petition for a rule to show cause, the defendants did nothing for another 40 days when they finally filed their motion to vacate. The appellate court reversed the grant of section 2–1401 relief, concluding that the " 'defendants' dilemma is the result of their own negligence and attitude of nonresponse.' " *European Tanspa*, 242 Ill. App. 3d at 108, quoting *Hogan & Farwell, Inc. v. Meitz*, 45 Ill. App. 3d 216, 222 (1976).

In *Cooper*, the plaintiffs' petition was filed over three months after they became aware of the order dismissing their complaint. Although the appellate court noted that delays of two to three months "have been regarded by Illinois courts as constituting such a lack of due diligence as to justify denial of the requested post-judgment relief" (*Cooper*, 122 Ill. App. 3d at 856-57), the appellate court ultimately looked to the "totality of facts" before it (*Cooper*, 122 Ill. App. 3d at 857). Significantly, the plaintiffs conceded that they were not precluded from discovering the existence of the dismissal order sooner or filing their petition sooner. In light of what it termed the plaintiffs'

"procrastinative conduct," the appellate court affirmed the denial of relief. *Cooper*, 122 Ill. App. 3d at 856.

Finally, in *Elmwood Ford*, the appellate court observed that the defendant could have acted promptly and filed his petition within 30 days of the default judgment or shortly thereafter. Instead, he waited an additional 17 days. The opinion makes no mention of any excuse–reasonable or otherwise–offered by the defendant for the delay. Based on this record, the appellate court concluded, "This does not sound like due diligence," and affirmed the circuit court's denial of relief. *Elmwood Ford*, 42 Ill. App. 2d at 344.

Contrary to defendants' argument, *European Tanspa*, *Cooper*, and *Elmwood Ford* do not establish a temporal cutoff for judging due diligence. Instead, these opinions reinforce two principles: first, that a petitioner seeking relief from judgment must do so expeditiously; and second, that the due-diligence inquiry is, in the end, case specific. As we stated in *Airoom*, in judging the reasonableness of a petitioner's excuse for not acting sooner, "all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the litigants and their attorneys." *Airoom*, 114 Ill. 2d at 222.

Considering the circumstances in the present case, we agree with the appellate court that "the record does not demonstrate an abuse of discretion by the trial court in concluding that plaintiff exercised due diligence *** in filing her petitions." Nos. 1–04–0189, 1–04–0214 cons. (unpublished order under Supreme Court Rule 23). According to the unrefuted affidavits filed in support of plaintiff's petitions, plaintiff contacted her attorney "immediately" after the bankruptcy court issued the order releasing the Adelman and Mann cases. Plaintiff's attorney promptly checked the court files and learned that the cases had been dismissed. Counsel then contacted the Peterson & Ross Dissolution Committee to seek release of plaintiff's files. That process was completed with the entry of a written agreement five months later, at which time the files were released. Five weeks later, plaintiff filed her petitions and supporting documents in the circuit court. The circumstances here stand in contrast to those in *European Tanspa*, where the petitioners exhibited an attitude of

˘13˘

nonresponse, or those in *Cooper*, where the petitioners' procrastinative conduct was conceded, or those in *Elmwood Ford*, where the petitioner apparently offered no explanation for the delay in filing his petition.

Defendants contend, however, that nearly all of the supporting documents appended to plaintiff's section 2–1401 petitions were available in publicly accessible court files and that plaintiff could have filed her petitions immediately after learning of the dismissal orders, instead of waiting several months for the release of her files.

The supporting documents appended to plaintiff's petitions included plaintiff's affidavit and counsel's affidavit; the underlying complaints filed in Cook County; the Cook County circuit court orders placing the cases on the bankruptcy calender; an order from the federal district court for the Northern District of Illinois remanding the Adelman case to the Cook County circuit court; an order from the United States Bankruptcy Court for the Northern District of Indiana abandoning the cases back to plaintiff; and a letter from the Illinois Department of Insurance addressed to plaintiff. Although plaintiff might have been able to cull the court files in Illinois and Indiana and file her petitions sooner, we do not view plaintiff's decision to pursue release of her files before seeking section 2–1401 relief as tantamount to a lack of due diligence.

As plaintiff notes, two documents which she needed in order to defend her petitions were not available in the court files, namely, a letter from plaintiff's counsel to the bankruptcy court and a letter from plaintiff's counsel to opposing counsel in the Mann litigation. Specifically, Adelman claimed, in response to plaintiff's section 2–1401 petition, that after the trustee in bankruptcy withdrew his objection to plaintiff proceeding with her lawsuits in January 2001, plaintiff failed to submit to the bankruptcy court a proposed order to that effect for more than two years. Adelman thus argued that plaintiff failed to exercise due diligence in prosecuting her claims. Plaintiff was able to refute Adelman's claim by producing a letter from plaintiff's counsel, retrieved from the Peterson & Ross files, clearly indicating that a draft order had been sent to the bankruptcy court in April 2001.

In addition, the Mann defendants claimed, in response to plaintiff's section 2–1401 petition, that plaintiff obstructed the resolution of that litigation by refusing to respond to discovery requests. Plaintiff, however, was able to produce a letter from the Peterson & Ross file tending to refute this claim. The letter, addressed to Mann's counsel, indicates that the parties had discussions concerning the course of discovery and that plaintiff was seeking to defer further discovery pending resolution of defendants' motion to dismiss.

The record thus demonstrates that plaintiff was faced with the difficult choice of either filing her section 2–1401 petitions sooner, but leaving herself vulnerable to a charge that she failed to pursue the underlying claims with due diligence, or filing the petitions later, after release of the files, but leaving herself open to a charge that she failed to pursue section 2–1401 relief as expeditiously as she could have. Bearing in mind that a section 2–1401 petition calls upon the equitable powers of the court (*Airoom*, 114 Ill. 2d at 221), we are disinclined to penalize plaintiff for choosing the latter option. We cannot fault plaintiff or her counsel for seeking to review the history of the litigation prior to filing her petitions and having at their disposal all that would be necessary to support and defend the petitions. Accordingly, we reject defendants' argument that plaintiff failed to exercise due diligence in the filing of her section 2–1401 petitions.

III

Defendants next argue that the circuit court erred in granting plaintiff relief because plaintiff did not demonstrate due diligence in prosecuting the Adelman and Mann cases prior to filing for personal bankruptcy. Plaintiff filed her bankruptcy petition one year after she filed the Adelman case, and eight months after she filed the Mann case. Defendants assert that during this time plaintiff did not depose defendants, Shashi Paul, or any other fact witness, did not conduct expert discovery, and did not file any dispositive motions.

Although defendants correctly identify those things that plaintiff did not do, defendants overlook those things that

plaintiff did do to advance the litigation. A month after filing the Adelman complaint, plaintiff filed her first set of interrogatories and request for production of documents. Shortly thereafter, plaintiff successfully blocked Kemper's attempt to remove the case to the federal district court. Plaintiff also answered Adelman's interrogatories, Kemper's interrogatories, and Kemper's request for production of documents. In response to Kemper's motion to dismiss certain counts, plaintiff sought and obtained leave to amend the complaint. With respect to the Mann litigation, directly after defendants filed their appearance, plaintiff filed her first request for production of documents. Plaintiff also responded to Mann's section 2–619 and section 2–615 motions to dismiss. Those motions were never fully litigated, due to plaintiff's bankruptcy. Based on this record, we are in agreement with the courts below that plaintiff exercised the requisite due diligence in prosecuting her claims prior to filing for protection under the bankruptcy laws.

Defendants also argue that plaintiff failed to exercise due diligence in prosecuting her claims after the cases were placed on the bankruptcy calendar in the circuit court. Defendants contend that plaintiff had an obligation to follow the progress of her cases and that she failed to do so, as evidenced by the undisputed fact that plaintiff first learned of the dismissal orders 18 months after they were entered. Defendants also contend that plaintiff's lack of diligence is demonstrated by the fact that plaintiff failed to secure an order from the bankruptcy court allowing her to proceed with the Adelman and Mann cases for more than two years after the trustee in bankruptcy consented. Defendants argue that "plaintiff and her counsel did not merely neglect the Illinois cases," "they affirmatively ignored them," and that reinstatement is not justified under these circumstances.

We agree with defendants that a party must follow the progress of her case, and that a section 2–1401 petition will not relieve a party of the consequences of her or her attorney's neglect of a matter. *Kaput*, 124 Ill. 2d at 383. We disagree, however, that plaintiff's failure to check the status of her cases in Cook County, after they had been placed on the bankruptcy

calendar, amounts to neglect of her cases and a lack of due diligence.

As the record indicates, the Adelman and Mann cases were part of the estate in bankruptcy and under the control of the trustee in bankruptcy. Defendants do not dispute that plaintiff was without authority to prosecute her claims in Cook County without the trustee's approval. Once the cases were placed on the Cook County circuit court's bankruptcy calendar, plaintiff could reasonably assume that no activity could or would occur in that court. Thus, plaintiff, who was without counsel in the Adelman and Mann cases at the time the DWP orders were entered, had no reason to believe that a check of the Cook County court docket was necessary. In addition, plaintiff's unrefuted affidavits filed in support of her section 2–1401 petitions indicate that she repeatedly asked the trustee in bankruptcy either to pursue the Adelman and Mann cases or allow her to do so. When the bankruptcy court entered its order abandoning the cases back to plaintiff, she promptly contacted her former counsel who, shortly thereafter, took steps to obtain her files and reinstate the cases. Such conduct is not indicative of a lack of due diligence.

The fact that the bankruptcy court entered its order abandoning the cases back to plaintiff two years after the trustee in bankruptcy consented is also not indicative of a lack of due diligence. As discussed above, plaintiff submitted a proposed order to the bankruptcy court in April 2001, six months prior to the DWP orders. In plaintiff's unrefuted affidavit (appended to her reply brief in support of her section 2–1401 petition in the Adelman case), plaintiff avers that she requested the bankruptcy court to enter the proposed order at various status conferences to no avail. Defendants do not identify what more plaintiff, who was not represented by counsel at that time, could have done to expedite the matter. Under these circumstances, we agree with the appellate and trial courts that plaintiff exercised due diligence.

IV

Defendants next argue that the trial court erred in granting section 2–1401 relief because plaintiff failed to establish a meritorious claim. They maintain that plaintiff's petitions contained only conclusory allegations and that plaintiff did not and cannot establish standing to sue defendants, the existence of damages, the existence of a contract with the Mann defendants, the existence of a fiduciary duty with the Mann defendants, or an exception to federal preemption under ERISA. Defendants' argument misses the mark.

We note that defendants made similar arguments in their motions to dismiss filed in the original actions. The dismissal motions were never decided, however, because the cases were placed on the bankruptcy calendar. Although defendants raised these issues in the course of the section 2–1401 proceeding, the trial court did not address these issues in its ruling, implicitly adopted the plaintiff's argument that these issues should be decided if and when the cases are reinstated. We find no error in the trial court's ruling.

Issues of standing, damages, preemption, and the like all concern the merits of the Adelman and Mann cases. In ruling on plaintiff's section 2–1401 petitions, however, it was not the trial court's responsibility to determine the merits of the underlying causes of action. See *Reuben H. Donnelley Corp. v. Thomas*, 79 Ill. App. 3d 726, 731 (1979). The central facts which plaintiff was required to plead and prove in connection with her petitions are not those facts which would establish her entitlement to damages in the underlying actions, but those facts which would establish her entitlement to have the DWP orders vacated. See *Smith v. Cole*, 256 Ill. App. 3d 806, 810 (1993); *Manning v. Meier*, 114 Ill. App. 3d 835, 840 (1983); *Yorke v. Stineway Drug Co.*, 110 Ill. App. 3d 1009, 1014 (1982), *overruled on other grounds by S.C. Vaughan Oil*, 181 Ill. 2d at 511; *Windmon v. Banks*, 31 Ill. App. 3d 870, 874 (1975); *Smith v. Pappas*, 112 Ill. App. 2d 129, 133 (1969). Plaintiff's petitions and supporting documents, which outlined the history of the litigation, her efforts to advance the cases, the delays attributable to the trustee in bankruptcy, the difficulty in obtaining her litigation files, and related matters adequately established her entitlement to vacatur of the DWP orders.

Unlike the trial court, the appellate curt chose to address two of the foregoing issues–federal preemption and damages–rejecting defendants' arguments. Nos. 1–04–0189, 1–04–0214 cons. (unpublished order under supreme Court Rule 23). As discussed above, however, these issues were not germane to the section 2–1401 proceeding and should not have been addressed by the appellate court, notwithstanding defendants' continued efforts to have these issues decided prior to any reinstatement.

Moreover, the issues of federal preemption and plaintiff's ability to establish damages both devolve into fact questions more appropriate for resolution in the trial court. The preemption issue, as argued by defendants, turns on whether plaintiff and her former husband were the only pension plan participants. The damages issue, as argued by defendants, turns on whether plaintiff received everything to which she would otherwise be entitled when the marital estate, including the pension plan, was divided during the divorce proceedings. The trial court is the place for such fact-finding to occur.

For these reasons, we vacate that portion of the appellate court order addressing federal preemption and damages. Defendants, should they choose, may raise these issues on remand.

CONCLUSION

We affirm the appellate court's judgment affirming the circuit court's order granting plaintiff's section 2–1401 petitions and reinstating the Adelman and Mann cases; vacate that portion of the appellate court order addressing defendants' preemption argument and damages argument; and remand to the circuit court for further proceedings.

*Affirmed in part and vacated in part;*
*cause remanded.*

CHIEF JUSTICE THOMAS and JUSTICES FREEMAN and BURKE took no part in the consideration or decision of this case.