FOURTH DIVISION
March 29, 2007

No. 1-06-1813

| | | |
|---|---|---|
| CHARLES ROBINSON, | ) | |
| | ) | Appeal from |
| Plaintiff-Appellee, | ) | the Circuit Court |
| | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK J. RYAN, Individually and as agent of Cohn, | ) | |
| Lambert, Ryan, Schneider and Gray, Ltd., an Illinois | ) | |
| Corporation, COHN, LAMBERT, RYAN, SCHNEIDER | ) | |
| AND GRAY, LTD., an Illinois Corporation, | ) | Honorable |
| | ) | Jennifer Duncan-Brice, |
| Defendants | ) | Judge Presiding. |
| | ) | |
| (North American Elite Insurance Company, | ) | |
| | ) | |
| Intervenor-Appellant). | ) | |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

North American Elite Insurance Company (North American) appeals from an order of the

circuit court of Cook County denying its petition seeking relief from a judgment entered in favor

of plaintiff Charles Robinson, pursuant to section 2-1401 of the Code of Civil Procedure (Code)

(735 ILCS 5/2-1401 (West 2002)).  On appeal, North American contends that the circuit court

abused its discretion by denying its petition where North American asserted a meritorious

defense to the validity of the judgment and exercised due diligence in presenting its defense.  For

the following reasons, we reverse.

1-06-1813

## I. Background

On February 6, 2003, plaintiff filed a complaint against defendants Patrick J. Ryan, and the law firm of Cohn, Lambert, Ryan Schneider & Gray, Ltd (Cohn Lambert). According to the complaint, on June 14, 1996, plaintiff sustained injuries while performing work as a plumber. Plaintiff retained defendants to represent him in a worker's compensation claim for the injuries he sustained. The complaint alleged that defendants failed to file a complaint for damages against third parties, other than plaintiff's employer, within the applicable statute of limitations period and failed to advise plaintiff that he had a claim against third parties. Defendants answered plaintiff's complaint and denied negligence and injury to plaintiff.

On July 7, 2005, Circuit Court Judge Richard J. Elrod held a pretrial conference. At the conclusion of the pretrial conference, R. Connor Heist, attorney for defendants, drafted an order that was entered by Judge Elrod dismissing plaintiff's claims with prejudice and reflecting a commitment by defendants to settle the case for $825,000. The order stated that "[d]efendants agree to a settlement offer of $825,000 and [p]laintiff agrees to accept a settlement payment of $825,000 upon resolution of an internal accounting issue with the insurance company." The order also provided that the court would retain jurisdiction and directed the parties to appear on July 26, 2005, to "execute settlement documents and resolve lien issues."

On July 26, 2005, the parties appeared and the circuit court entered an order finding that "all liens have been resolved" and that the court's July 7, 2005, order remained in effect. The court ordered defendants to pay the agreed-upon settlement amount of $825,000, as reflected in the July 7, 2005, order, on or before August 9, 2005. This order was entered over plaintiff's

1-06-1813

objection, as settlement documents and payment were due on July 26, 2005. The court also retained jurisdiction to enforce payment.

On August 5, 2005, defendants retained new counsel, who filed a motion to appear as additional counsel and a verified petition to vacate the orders entered on July 7, 2005, and July 26, 2005. In the motion to vacate, defendants asserted that they had learned that their insurance company, North American, had refused to settle the claim with plaintiff and had directed defendants' previous attorney R. Connor Heist not to enter into a settlement agreement. Defendants maintained that they did not execute any settlement documents in this case and would not have agreed to any settlement without the prior approval of their insurance company, North American. On August 10, 2005, plaintiff filed a motion for judgment requesting that the court enter judgment against defendants in the amount of $825,000.

On August 12, 2005, Judge Elrod conducted a hearing to address these motions. At that hearing, R. Connor Heist was granted leave to withdraw as counsel for defendants. Dominic Saviano and the law firm of Clausen Miller, P.C., were granted leave to appear as substitute counsel retained for defendants by North American. Jerome Crotty of the law firm Rieck and Crotty, P.C., was permitted to appear as additional counsel, retained independently by defendants due to potential conflicts that could arise between defendants and North American. Judge Elrod gave both counsels representing defendants leave to file a single amended motion to reconsider vacating the previous orders. Judge Elrod also ordered that judgment be entered in favor of plaintiff and against defendants in the amount of $825,000, but that the execution of judgment be stayed for 60 days.

1-06-1813

On September 8, 2005, North American filed a motion for leave to intervene, seeking to intervene in order to protect the insurance company's rights with respect to whether the judgment should be vacated. On the same date, North American also filed its petition to vacate the orders entered on July 7, 2005, July 26, 2005, and August 12, 2005, pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)). In its section 2-1401 petition, North American stated that defendants Cohen Lambert and Ryan made a claim under the professional liability insurance policy issued by North American regarding the suit filed by plaintiff. North American provided defense counsel, Heist, to defendants. Les Czerepak, a senior claims manager at NAS Insurance Group, which includes North American, was the representative for the oversight of the handling of the suit filed by plaintiff. Aon Technical Insurance Services (ATIS) served as a third-party administrator and handled certain legal malpractice claims for NAS Insurance Group. ATIS had limited authority to settle claims up to an amount of $25,000. Payment of any settlement above $25,000 was required to be approved in advance by NAS Insurance Group.

In its petition, North American also asserted that at the conclusion of the July 7, 2005, pretrial conference, Heist drafted an order that was entered by the circuit court dismissing plaintiff's claims with prejudice and reflecting a commitment by defendants to settle the case for $825,000 "upon resolution of an internal accounting issue with the insurance company." North American stated that Grace Leppin of ATIS attended the pretrial conference but was no longer present when Heist drafted the order and Leppin did not see the order until after the July 26, 2005, hearing. On July 26, 2005, the circuit court ordered defendants to pay $825,000 to plaintiff on or before August 9, 2005. North American asserted that following the July 26, 2005, hearing,

-4-

1-06-1813

Czerepak received a letter that Heist wrote to Leppin, with both circuit court orders attached, in which Heist stated that he felt compelled to resign as counsel for Cohen Lambert. North American stated that Czerepak immediately informed the Cohen Lambert firm's new counsel that NAS had not authorized settlement by payment of $825,000.

North American attached to its petition the affidavit of Les Czerepak, who attested that he was a senior claims manager for NAS Insurance Group, which includes North American. Czerepak stated that he was responsible for the oversight of the handling of the suit filed by plaintiff. Czerepak attested that ATIS serves as a third-party administrator for NAS Insurance Group handling certain legal malpractice claims. ATIS had limited authority to settle claims up to an amount of $25,000, and settlement above that amount was to be approved in advance by NAS Insurance Group. Czerepak attested that Leppin from ATIS informed him that she would attend the July 7, 2005, pretrial hearing in this matter as the third-party administrator for NAS with limited settlement authority. Czerepak was also aware that Heist would attend the July 7, 2005, hearing, as the attorney hired to represent defendant.

Czerepak attested that during the July 7, 2005, hearing, he received a telephone call from Heist, who stated that he was with Leppin and defendant Ryan. Heist informed Czerepak that in the course of the pretrial hearing, the circuit court had recommended settlement for $825,000. Czerepak attested that he told Heist that NAS would not agree to settle for that amount because $825,000 was significantly more than NAS was prepared to pay based on information it had received about the case. Czerepak also informed Heist that the $825,000 amount exceeded his personal authority to settle claims for NAS, and that Czerepak's supervisor would have to review

the claim and join him in approving a settlement of that size. Czerepak attested that he instructed Heist to ask the circuit court for time for North American to review the claim information again, and requested that Heist send him a report of the discussion and developments at the pretrial hearing. Czerepak stated that during the telephone call, he expressly told Heist that North American did not agree to the proposed settlement and did not authorize settlement for $825,000. Czerepak also stated that he did not speak directly to Leppin and never gave her authority to settle the claim for $825,000.

Czerepak attested that after the July 7, 2005, hearing, he continued to have discussions and correspondence with Heist regarding the recommended settlement and discussed with Leppin whether NAS should agree to the recommendation. Czerepak stated that he never saw a copy of the July 7, 2005, order until after the July 26, 2005 hearing and was not aware of any verbal or written statement that could be construed as an agreement by NAS to pay $825,000 to settle this case. After the July 26, 2005, hearing, Czerepak received a copy of a letter that Heist wrote to Leppin, attaching both circuit court orders and stating that Heist felt compelled to resign as counsel for the Cohn Lambert firm. Czerepak attested that as soon as he understood that someone might have believed that Heist had authority from NAS to settle this claim for $825,000, he informed the new counsel for Cohn Lambert that NAS had not authorized settlement by payment of $825,000.

North American also attached to its section 2-1401 petition the affidavit of Grace Leppin, who attested that she was an employee of ATIS. North American retained ATIS to provide claims handling services regarding this lawsuit. On July 7, 2005, Leppin attended a pretrial

hearing on this case before Judge Elrod, during which the parties discussed the potential settlement of the case. During the pretrial hearing, Judge Elrod asked the parties whether the sum of $825,000 would be an agreeable amount to settle this case. Leppin attested that she advised the judge that she did not have settlement authority in that amount and that the insurer did not have reserves high enough to cover such an amount. Leppin stated that because she did not have authority to settle the case for the amount suggested by the judge, Heist called a representative from North American during the pretrial hearing. Leppin attested that at no time has any representative of North American extended authority to her or consented to settle this case for $825,000. At Judge Elrod's request, Leppin agreed that after the pretrial hearing she would recommend to the insurer that the case be settled for $825,000. Leppin attested that at no time during or after the pretrial hearing on July 7, 2005, did she agree on behalf of North American to settle the case for $825,000, and at no time did anyone in her presence advise Judge Elrod or plaintiff's counsel that North American consented to settling this suit for $825,000. Leppin also attested that she was not present when the order of July 7, 2005, was prepared or signed and she did not receive a copy of that order or see it until sometime after the circuit court hearing on July 26, 2005.

On September 8, 2005, Judge Elrod granted North American leave to intervene instanter. On November 8, 2005, plaintiff filed a motion for entry of judgment against North American and a motion to strike North American's petition to vacate judgment pursuant to section 2-1401 of the Code.

1-06-1813

On December 2, 2005, Judge Elrod entered an order finding that an evidentiary hearing would be necessary to resolve plaintiff's motions and North American's petition and that this might require testimony from Judge Elrod. As a result, Judge Elrod recused himself and transferred this case for reassignment. The order also directed that enforcement of the judgment entered against defendants on August 12, 2005, was stayed until the pending motions were resolved.

On December 9, 2005, this case was transferred to Judge Jennifer Duncan-Brice. On January 13, 2006, Judge Duncan-Brice set a hearing for February 3, 2006, on plaintiff's motion to strike North American's petition pursuant to section 2-1401 of the Code and on plaintiff's motion for entry of judgment against North American.

On February 3, 2006, Judge Duncan-Brice entered an order in which the court, inter alia, denied plaintiff's motion to enter judgment against North American where the order of dismissal and settlement had previously been entered against defendants. The court also denied North American's petition pursuant to section 2-1401 of the Code to vacate the orders entered on July 7, 2005, July 26, 2005, and August 12, 2005. In making this determination, the court found that North American failed to present any evidence that it had a meritorious defense to the underlying legal malpractice claim against defendants or that the amount of the settlement was unreasonable; North America presented no evidence regarding when it decided it was not going to settle the case for $825,000 or when that decision was communicated to their attorney; and North American failed to establish that it moved to vacate the dismissal order in a timely and diligent manner. On April 26, 2006, the circuit court denied North American's motion to reconsider the

-8-

denial of its petition to vacate judgment.  North American now appeals.

## II.  Analysis

### A.  Standard of Review

"Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)) establishes a comprehensive procedure by which final orders and judgments may be vacated or modified more than 30 days after their entry." Paul v. Gerald Adelman & Associates, Ltd., 223 Ill. 2d 85, 94 (2006).  "Although a section 2-1401 petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry [citation] a section 2-1401 petition may also be used to challenge a purportedly defective judgment for legal reasons [citation]." Paul, 223 Ill. 2d at 94.

"In order to receive relief under section 2-1401, a petition must affirmatively allege specific facts to support each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition seeking relief." Prenam No. 2, Inc. v. Village of Schiller Park, 367 Ill. App. 3d 62, 65 (2006); Paul, 223 Ill. 2d at 94.  The petition must also be "supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2002); Prenam No. 2, Inc., 367 Ill. App. 3d at 65.

Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented, and a reviewing court will only reverse the circuit court upon abuse of that discretion. Paul, 223 Ill. 2d at 95; Prenam No. 2, Inc., 367 Ill. App. 3d at 65.  In reviewing discretionary rulings by the trial court, an appeals court

" ' "must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion." ' " Paul, 223 Ill. 2d at 99, quoting People v. Ortega, 209 Ill. 2d 354, 360 (2004), quoting Boatmen's National Bank of Belleville v. Martin, 155 Ill. 2d 305, 314 (1993). "'[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts,' and a reviewing court 'must consider both the legal adequacy of [the] way the trial court reached its result as well as whether the result is within the bounds of reason.'" Paul, 223 Ill. 2d at 99, quoting Ortega, 209 Ill. 2d at 360.

### B. Meritorious Defense

North American contends that the circuit court erred in denying its section 2-1401 petition where North American met the requirements of section 2-1401. North American first argues that it set forth a meritorious defense to the entry of the circuit court's orders on July 7 and July 26, 2005 and the entry of judgment against defendants, where defense counsel lacked the authority to enter into a settlement agreement for $825,000. North American asserts that the the circuit court's finding that North American failed to set out a meritorious defense to the underlying case was an improper interpretation of section 2-1401.

Our supreme court recently addressed the section 2-1401 requirement that a petitioner set forth a meritorious defense or claim, in Paul v. Gerald Adelman & Associates, Ltd., 223 Ill. 2d 85 (2006). In Paul, the plaintiff, as joint trustee for a pension fund, filed petitions in the circuit court of Cook County seeking relief from judgment pursuant to section 2-1401 of the Code. The plaintiff sought to vacate two orders dismissing her causes of action for want of prosecution (DWP) against several defendants who provided administrative, actuarial, insurance, and other

services to the joint pension plan. The circuit court granted plaintiff's petitions, thus reinstating her cases. This court affirmed and our supreme court affirmed in part and vacated in part the judgment of this court.

In Paul, our supreme court determined that plaintiff's petitions and supporting documents, which outlined the history of the litigation, her efforts to advance the cases, the delays attributable to the trustee in her bankruptcy proceeding, the difficulty in obtaining her litigation files, and related matters, adequately established her "meritorious claim" for relief from the dismissal orders. In so finding, the court noted that issues relating to plaintiff's ability to establish standing to sue defendants, the existence of damages, the existence of a contract and fiduciary duty with defendants, and an exception to federal preemption under ERISA all concerned the merits of the underlying cases. The court held as follows:

> "In ruling on plaintiff's section 2-1401 petitions, however, it was not the trial court's responsibility to determine the merits of the underlying causes of action. [Citation.] The central facts which plaintiff was required to plead and prove in connection with her petitions are not those facts which would establish her entitlement to damages in the underlying actions, but those facts which would establish her entitlement to have the DWP orders vacated." Paul, 223 Ill. 2d at 107.

Accordingly, our supreme court vacated the portion of this court's order addressing defendant's arguments regarding federal preemption under ERISA and damages. The court also determined that the plaintiff acted with due diligence in petitioning for relief from the DWP orders and in

1-06-1813

prosecuting her claims against defendants. Paul, 223 Ill. 2d at 99-106.

In this case, the circuit court found that "North American has not presented any evidence in its attached affidavits that it has any meritorious defense to the underlying legal malpractice claim against defendants or that the amount of the settlement was unreasonable." Based on this finding, the circuit court concluded that North American failed to set forth a meritorious defense pursuant to section 2-1401. Pursuant to our supreme court's holding in Paul, we find that these issues were not germane to the section 2-1401 proceeding and should not have been considered by the circuit court. Since a trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts (Paul, 223 Ill. 2d at 99), we reverse the circuit court's determination that North American failed to set forth a meritorious defense pursuant to section 2-1401.

This court has previously addressed the section 2-1401 requirement that a petitioner set forth a "meritorious defense" in the context of seeking to vacate an order of settlement. In Blutcher v. EHS Trinity Hospital, 321 Ill. App. 3d 131 (2001), the plaintiff filed a section 2-1401 petition to vacate a settlement order that had dismissed one of the defendants in a medical malpractice suit. The plaintiff submitted an affidavit stating that he was completely unaware of his attorney's negotiations to settle the medical malpractice claim against the defendant hospital and that he was unaware of the consummated agreement. The plaintiff also submitted a transcript of his attorney's telephone messages to plaintiff, in which the attorney admitted that he lacked the authority to settle the case. Under these circumstances, this court found that the plaintiff established that his attorney lacked the express authority to settle the case and, therefore, pursuant to section 2-1401, established a meritorious defense to the dismissal under the

-12-

settlement agreement. This court explained "[s]ince plaintiff has established a meritorious defense (by his affidavit and the transcript of the telephone messages) that his attorney did not have authority to settle this case, that he did not consent to nor was aware of the settlement, and that he did not sign the release, the burden of proof shifted to [the defendant hospital] to show the validity of these documents." Blutcher, 321 Ill. App. 3d at 140.

This court engaged in a similar analysis of the meritorious defense element for vacating a settlement agreement and dismissal, under section 2-1401 of the Code, in Hopkins v. Holt, 194 Ill. App. 3d 788 (1990). In Hopkins, the plaintiff agreed to settle his medical malpractice claim against the defendant doctor who had been defended by his insurance company, conditioned upon the insurance company paying settlement funds to the plaintiff. After the plaintiff was informed that the doctor's insurance company was insolvent and would not pay the settlement funds, the plaintiff filed a section 2-1401 petition to vacate the order dismissing the malpractice action pursuant to the settlement agreement between the parties. The plaintiff alleged that he was entitled to relief where the insurance company filed for bankruptcy and the settlement agreement was breached. Two of the defendants argued that the plaintiff failed to allege or prove that he had a meritorious claim against them. This court disagreed with the defendants' argument, noting that "[t]he facts which must be alleged in a section 2-1401 petition are not those which form the basis for the original action but those which allegedly entitle petitioner to the relief." Hopkins, 194 Ill. App. 3d at 795. This court concluded that where the plaintiff alleged sufficient facts relating to the breach of the settlement agreement that entitled him to relief from the dismissal, the plaintiff properly set forth a meritorious claim pursuant to section 2-1401.

1-06-1813

Hopkins, 194 Ill. App. 3d at 795.

In this case, North American's section 2-1401 petition and supporting affidavits, which outlined the settlement negotiations before the circuit court in this case and set forth facts to show that North American did not grant defense counsel the authority to settle the case by payment of $825,000, also established its entitlement to relief from the dismissal and settlement orders. In his affidavit, Czerepak stated that during the July 7, 2005, hearing, he received a telephone call from Heist, who informed him that the circuit court had recommended settlement for $825,000. Czerepak attested that he instructed Heist to ask the circuit court for time for North American to review the claim information again, and requested that Heist send him a report of the discussion and developments at the pretrial hearing. Czerepak stated that during the telephone call, he expressly told Heist that North American did not agree to the proposed settlement and did not authorize settlement for $825,000. Czerepak also attested that after the July 7, 2005, hearing, he continued to have discussions and correspondence with Heist regarding the recommended settlement and discussed with Leppin whether NAS should agree to the recommendation. In her affidavit, Leppin stated that after the pretrial hearing she agreed to recommend to the insurer that the case be settled for $825,000. However, Leppin attested that at no time during or after the pretrial hearing on July 7, 2005, did she agree on behalf of North American to settle the case for $825,000. Leppin further attested that at no time did anyone in her presence advise Judge Elrod or plaintiff's counsel that North American consented to settling this suit for $825,000.

We next consider whether North American demonstrated due diligence in presenting its

-14-

1-06-1813

petition, as required by section 2-1401 of the Code.

## C. Due Diligence

No bright-line rule exists for judging whether a petitioner has acted diligently. Paul, 223 Ill. 2d at 99. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances. Paul, 223 Ill. 2d at 99-100, citing Smith v. Airoom, Inc., 114 Ill. 2d 209, 222 (1986). In judging the reasonableness of a petitioner's excuse for not acting sooner, " 'all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the litigants and their attorneys.' " Paul, 223 Ill. 2d at 101, quoting Airoom, 114 Ill. 2d at 222.

In Paul, our supreme court addressed the diligence requirement and determined that the plaintiff acted with due diligence in petitioning for relief six months after learning of the dismissals of her cases. Plaintiff's cases had been placed on the circuit court's bankruptcy calendar after plaintiff filed for bankruptcy protection and plaintiff assumed no action would take place while the cases were on that calendar. Plaintiff's attorney also had to negotiate for release of plaintiff's files from the attorney's former law firm. The court stated that it "cannot fault plaintiff or her counsel for seeking to review the history of the litigation prior to filing her petitions and having at their disposal all that would be necessary to support and defend the petitions." Paul, 223 Ill. 2d at 104.

Here, we find that North American also acted in a diligent manner where it petitioned for relief less than two months after learning of the July 7 and July 26, 2005, orders, and within 30 days of the August 12, 2005, judgment order against defendants.

-15-

North American's section 2-1401 petition and the affidavits of Czerepak and Leppin sufficiently established that North American moved to vacate the dismissal and judgment orders in a diligent manner. In its petition, North American outlined the settlement proceedings before the circuit court. At the conclusion of the July 7, 2005, pretrial conference, Heist drafted an order that was entered by the circuit court dismissing plaintiff's claims with prejudice and reflecting a commitment by defendants to settle the case for $825,000 "upon resolution of an internal accounting issue with the insurance company." In his affidavit, Czerepak attested that he spoke with Heist during the July 7, 2005, pretrial conference and informed Heist that North American did not agree to the proposed settlement for $825,000. In her affidavit, Leppin attested that she attended the pretrial conference but was no longer present when Heist drafted the order and she did not see the order until after the July 26, 2005 hearing. On July 26, 2005, the circuit court ordered defendants to pay $825,000 to plaintiff. Cezerepak attested that after the July 26, 2005, hearing, he received a letter that Heist wrote to Leppin, with both circuit court orders attached, in which Heist stated that he felt compelled to resign as counsel for the Cohen Lambert firm. Cezereak specifically stated that he "never saw a copy of the July 7, 2005 order until after the July 26, 2005 hearing." Cezereak further attested that as soon as he understood that anyone might have believed that attorney Heist had authority from NAS to settle this claim for $825,000, he informed defendant's new counsel that NAS had not authorized settlement by payment of $825,000.

The record shows that on August 5, 2005, defendants retained new counsel who filed a motion to appear as additional counsel and a verified petition to vacate the orders entered on July

7, 2005, and July 26, 2005. On August 12, 2005, Dominic Saviano and the law firm of Clausen Miller, P.C., were granted leave to appear as substitute counsel retained for defendants by North American. Jerome Crotty of the law firm Rieck and Crotty, P.C., was permitted to appear as additional counsel, retained independently by defendants due to potential conflicts that could arise between defendants and North American. Judge Elrod gave both counsels representing defendants leave to file a single amended motion to reconsider vacating the previous orders. Judge Elrod also ordered that judgment be entered in favor of plaintiff and against defendants in the amount of $825,000. Within 30 days, on September 8, 2005, North American filed a motion for leave to intervene and its section 2-1401 petition to vacate the orders entered on July 7, 2005, July 26, 2005, and the judgment entered on August 12, 2005. Considering these circumstances, we conclude that North American established that it exercised due diligence in filing its section 2-1401 petition.

## III. Conclusion

For the above stated reasons, we reverse the circuit court's judgment denying North American's section 2-1401 petition and remand this case for further proceedings.

Reversed and remanded.

CAMPBELL and MURPHY, JJ., concur.