2020 IL App (1st) 190289-U

SIXTH DIVISION
August 21, 2020

No. 1-19-0289

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| In re Estate of SADIE FOUNTAINE, Deceased, by CHRISTINA FOUNTAINE, Supervised Administrator, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, County Department, |
| Plaintiff-Appellee, | ) ) | Probate Division. |
| v. | ) ) | No. 2015 P 7254 |
| BELLE FOUNTAINE, | ) ) | Honorable Karen L. O'Malley, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**O R D E R**

¶ 1    *Held*: Order denying a section 2-1401 petition to vacate certain orders of the probate court affirmed where court's denial of petition on the basis that the petitioner failed to produce evidence of a meritorious claim and failed to diligently pursue her claim by neglecting to appear for numerous hearings was not an abuse of discretion.

¶ 2    Appellant Belle Fountaine challenged the administration of the estate of her late mother,

Sadie Fountaine, claiming that two properties, one at 2801 W. Jerome Street (the Jerome property)

and one at 1921 W. Summerdale Avenue (the Summerdale property) (collectively, the Properties),

which the Supervised Administrator claimed were part of her mother's estate, had been given to her by her mother. The circuit court dismissed Belle's claims against the estate and Belle subsequently filed a petition to vacate the series of orders that granted possession of the Properties to the estate under section 2-1401 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2016). The circuit court denied the petition, finding that Belle was not diligent in pursuing her claims and further, that she was unlikely to succeed on the merits. On appeal, Belle argues that the circuit court abused its discretion in finding that she lacked diligence, failing to consider the equities of her case, and determining that her claim lacked merit. Belle also argues that the circuit court abused its discretion when it failed to recuse itself from issuing a decision on the petition. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      Sadie Fountaine, mother of Belle and Christina Fountaine (Tina) died on April 16, 2015, leaving Belle and Tina as her sole living heirs. Tina initiated this probate action by filing a petition for letters of administration on November 25, 2015. Tina sent notice to Belle that the petition for letters of administration was set for hearing on January 4, 2016, which Belle attended. Following the hearing, over Belle's objection, the circuit court appointed Tina as the sole Supervised Administrator of Sadie's estate and set the date for a subsequent hearing on the inventory and accounting for March 1, 2016.

¶ 5      On January 25, 2016, the Supervised Administrator sent a letter to Belle requesting that she provide certain information regarding Sadie's estate, including all pertinent information related to the Properties. On April 13, 2016, the Supervised Administrator filed a petition for issuance of citation to discover information alleging that Belle failed to cooperate with the requests for information that were necessary to administer Sadie's estate. The Supervised Administrator also

2

filed a petition for authority to secure the estate's real estate and other assets. This included permission from the court to enter and secure Sadie's real estate, collect rent on the properties, record *lis pendens* on the Properties, and to access Sadie's financial accounts. The court entered two orders on April 13, 2016: the first order granted the petition for issuance of citation to discover information from Belle and the second order granted the Supervised Administrator's requests outlined in the petition for authority to secure the estate's real estate and other assets.

¶ 6    The Supervised Administrator issued the citation to discover information on April 15, 2016. The record indicates that between April 15, 2016, and August 17, 2016, the Supervised Administrator attempted to serve Belle with the citation multiple times without success. After failing to effect service of the initial citation, the Supervised Administrator sought leave from the court to issue alias citations on three subsequent occasions. The court granted each request in a series of orders dated May 13, 2016, June 16, 2016, and July 26, 2016. The process server attested that he was unable to serve Belle due to "evading."

¶ 7    On June 23, 2016, Belle retained counsel to represent her in the probate action. Belle testified that she showed her counsel two quitclaim deeds that supported her ownership interest in the Properties. These two quitclaim deeds were allegedly executed by Sadie and Belle prior to Sadie's death and served to transfer title to the Properties from Sadie to Belle. At the time Belle showed counsel these quitclaim deeds, the deeds were not recorded and did not contain grantor-grantee statements.

¶ 8    On August 17, 2016, the Supervised Administrator filed a petition for possession of the Properties and the authorization to enter and secure the Properties "so as to sell them and apply the funds for estate expenses including, without limitation, the overdue property taxes." The Supervised Administrator notified Belle of the petition via certified mail on August 18, 2016.

¶ 9     On August 24, 2016, Belle entered her appearance through counsel and asserted the following claims against the estate: (1) a claim for funeral and burial expenses, (2) a statutory custodial claim pursuant to section 18-1.1 of the Illinois Probate Code (755 ILCS 5/18-1.1 (West 2016)), (3) a claim for reimbursement for mortgage payments, home equity line payments, real estate taxes, insurance, building permits and fines, and maintenance expenses made on behalf of Sadie in connection with real estate titled in Sadie's name, and (4) a Seventh Class Claim in the alternative to a court determination that Belle had an ownership interest in the Properties. Belle's claims against the estate totaled over $700,000.

¶ 10    On September 6, 2016, Belle's counsel filed a motion to withdraw citing "irreconcilable differences." At a hearing on September 15, which Belle attended, the court granted the motion and directed Belle to obtain new counsel within 21 days and continued other pending matters to October 7, 2016.

¶ 11    At the hearing on October 7, 2016, all parties were present. Belle appeared without counsel but she did not enter a *pro se* appearance, and she requested additional time to secure representation. The court entered an order granting Belle's request. The October 7 order also (1) granted the Supervised Administrator's petition for possession of estate-owned real estate at the Summerdale property, (2) directed Belle to provide the Supervised Administrator with access to the Jerome property for inspection and maintenance, (3) ordered Belle to produce all documents requested in the Supervised Administrator's citation to discover information, and (4) provided Belle 14 days to remove her tangible belongings from the Summerdale property.

¶ 12    Belle secured new counsel who filed an appearance on October 13, 2016. On October 24, 2016, Belle filed an emergency petition to vacate portions of the order issued on October 7, 2016. In the emergency petition, Belle asserted an ownership interest in the Properties separate from her

interest in the estate as Sadie's heir and, in support of her claim, attached the two quitclaim deeds for the Properties that she had in her possession. As Belle explained in that petition, the Summerdale property is a five-unit apartment building and the Jerome property is a single-family residence. Belle claimed that she used her own money to pay the mortgages and taxes and maintain the Properties. Belle argued that because she had a separate ownership interest in the Properties they were improperly classified as assets of the estate and that the court entered its October 7, 2016, order "prematurely" without giving full consideration to Belle's claims.

¶ 13　On November 1, 2016, the circuit court set a briefing schedule on the emergency petition to vacate. The circuit court also granted Belle another extension of time to respond to the Supervised Administrator's citation to discover information, setting the deadline as November 22, 2016.

¶ 14　Belle admitted that she was aware that her counsel did not submit responses to the citation by November 22, 2016, but that "it was [her] understanding *** that [her counsel] would present the written response and produce the documents" at the hearing scheduled for December 7, 2016. However, Belle's counsel filed a motion to withdraw on December 6, 2016. Belle stated that while her counsel informed her that he was withdrawing, he did not tell her that he failed to respond to the citation before doing so. Belle also testified that her counsel provided her with notice of the next hearing date, January 5, 2017, but claimed that he did not inform her that the Supervised Administrator filed a motion to compel Belle's response to the citation and that it was set for hearing the same day.

¶ 15　Belle did not attend the hearing on January 5, 2017. At the hearing, the circuit court granted counsel's motion to withdraw, ordered Belle to obtain new counsel within 21 days, and continued all other pending matters to February 2, 2017, without further notice. Belle did not obtain new

counsel and she did not attend the hearing on February 2, 2017. Following the hearing, the circuit court issued an order granting the Supervised Administrator's motion to compel and ordered Belle to respond to the citation to discover by February 9, 2017. The circuit court also denied Belle's emergency petition to vacate "for reasons stated in open court." However, there is no transcript of that hearing in the record. The circuit court further ordered Belle to appear at a hearing on February 10, 2017, and stated that her failure to do so would result in sanctions.

¶ 16    The Supervised Administrator provided Belle with notice of the February 2 order, but Belle did not attend the hearing on February 10, 2017. At that hearing, the circuit court dismissed Belle's claims against the estate and granted the estate full possession of the Properties. On March 13, 2017, the Supervised Administrator received permission from the court to evict Belle from the Properties.

¶ 17    After the circuit court dismissed her claim, Belle did not make an appearance or participate in the probate proceeding again until October 13, 2017. However, Belle recorded her quitclaim deeds for the Properties on March 14, 2017, and March 24, 2017, outside of the court proceedings. Belle attached a certificate of acknowledgement and a grantor-grantee statement to each quitclaim deed. Belle later explained that the grantor-grantee statements she attached to the quitclaim deeds were not prepared at the time the deeds were purportedly executed. The grantor-grantee statements are dated April 11, 2000, while the date on both quitclaim deeds is June 21, 2002.

¶ 18    On June 15, 2017, the Supervised Administrator received authorization to proceed with an action to quiet title and to remove the quitclaim deeds that Belle recorded in March 2017. The complaint to quiet title was filed on August 14, 2017, and requested that the court void the deeds that Belle recorded for the Properties, divest her of any purported interest in the Properties, and grant title to the Supervised Administrator in fee simple.

¶ 19    Belle filed her answer, affirmative defenses, and counterclaim against the Supervised Administrator on October 19, 2017. Belle denied that Supervised Administrator had superior title, argued that the quitclaim deeds she recorded in March 2017 were valid, and requested that the court order the Supervised Administrator to remove the *lis pendens* on the Properties because she had valid title. The Supervised Administrator's response was that the quitclaim deeds Belle recorded were invalidly executed, dated, and notarized and her claim therefore lacked merit.

¶ 20    On March 6, 2018, Belle, through counsel, filed her petition to vacate several orders of the probate court pursuant to section 2-1401 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2016). Specifically, Belle sought to vacate parts of the circuit court's orders issued on April 13, 2016, October 7, 2016, February 2, 2017, February 10, 2017, March 13, 2017, and June 15, 2017. Together, these orders (1) determined that the Supervised Administrator had possession of the Properties and that the Properties were part of the Sadie's estate, (2) granted the Supervised Administrator access to the Properties and the right to evict Belle from the Properties, (3) denied Belle's October 2016 emergency petition to vacate, which asserted that she had an ownership interest in the Properties, and (4) dismissed Belle's claim against the estate in full. In response to this petition, the court allowed the Supervised Administrator leave to take Belle's deposition and the deposition of the lawyer who Belle alleged had prepared the quitclaim deeds for the Properties. The court denied Belle's request to depose the Supervised Administrator.

¶ 21    As Belle explained in her petition to vacate and in her deposition, Belle and Sadie lived together at the Properties from 2002 until the time of Sadie's death. Belle explained that during that time she "put [her] life on hold" to assist Sadie and act as her primary caretaker while Sadie suffered from increasingly diminished health. Belle further explained that she used her own funds to maintain the Properties and received no support, financial or otherwise, from her sister while

she took care of their mother.

¶ 22    According to Belle's affidavit, after Sadie purchased the Jerome property in 1997, she and her mother executed a series of quitclaim deeds that transferred the Properties between themselves. To execute the first of these conveyances, Sadie and Belle visited the office of Sadie's attorney, Eric Romer on April 11, 2000. There, Sadie signed a quitclaim deed conveying the Summerdale property to Belle, and the deed was recorded on April 12, 2000. In a letter written by Sadie to Mr. Romer and dated December 28, 2000, Sadie requested that he prepare another quitclaim deed to transfer the Summerdale property from Belle back to Sadie because Belle realized that the first transfer affected the property's eligibility for a senior tax exemption and a "senior freeze." Mr. Romer prepared and notarized the quitclaim deed that same day and promptly recorded it on December 29, 2000.

¶ 23    In the summer of 2002, Belle and Sadie again visited Mr. Romer's office and Belle testified that Sadie executed two quitclaim deeds during this visit. The first quitclaim deed contained language conveying the title of the Jerome property from Sadie to Belle. The second quitclaim deed contained language transferring the Summerdale property to a joint tenancy between Belle and Sadie, with the right of right of survivorship in Belle.

¶ 24    Belle testified that after Sadie executed both deeds, Mr. Romer notarized the deeds and supplied the grantor-grantee statements. Belle and Sadie both examined the documents, but before Belle could put them away, Mr. Romer "reached across his desk and grabbed them out of [Belle's] hands" saying that he would keep the deeds until Belle and Sadie were ready to record them. According to Belle, she and Sadie asked for copies of the quitclaim deeds, but Mr. Romer gave them only an unsigned quitclaim deed with the description of the Summerdale property and a blank quitclaim deed—without a property description—for the Jerome property. Belle testified "that

8

weekend or several days" later Sadie executed those blank deeds and told Belle that they were to be the "backup" copies to the originals Mr. Romer held in his office. In the corrections to her deposition testimony, Belle clarified that Sadie executed these "backup" deeds in 2012 rather than 2002. Neither the original quitclaim deeds that Belle believed to be in Mr. Romer's possession nor the "backup" deeds in Belle's possession were recorded before Sadie died in 2015. When asked why neither she nor Sadie immediately recorded the "backup" quitclaim deeds, Belle stated that doing so "would change the status on the Summerdale house for the tax purposes." These "backup" quitclaim deeds are the same deeds that Belle used to support her ownership interest in the Properties throughout the probate proceeding.

¶ 25    Mr. Romer disputed not only the details of this meeting, but that it occurred at all. In his affidavit, Mr. Romer stated that "[he] did not, to the best of [his] recollection, meet with Sadie and Belle Fountaine in [his] office for the purpose of preparing or executing deeds which would convey 1921 Summerdale or 2801 Jerome from Sadie to Belle Fountaine." Mr. Romer confirmed that he notarized the quitclaim deeds related to the Summerdale property on April 11 and December 28, 2000, but stated that he did not retain any deeds or grantor and grantee statements other than those related to the conveyances of the Summerdale property in 2000. Mr. Romer further testified that he "do[es] not retain signed, unrecorded deeds on behalf of his clients," and that "after June 2002, Sadie never asked [him] to prepare or record any deeds for her which would convey 1921 Summerdale or 2801 Jerome to Belle Fountaine."

¶ 26    Mr. Romer also testified that he believed Sadie was the owner of the Summerdale property because he represented her in an administrative hearing before the Chicago Department of Buildings in January 2009. During the proceeding Sadie identified herself as the owner of the Summerdale property and Mr. Romer claimed that Sadie never indicated that Belle was an owner

of the property. Mr. Romer further stated that if he knew that Belle was the owner of the property, he would have filed a motion to dismiss for the City's failure to name the proper owner.

¶ 27    On January 11, 2019, the court denied Belle's petition to vacate. The court stressed that it considered both the "equities" of the petition to vacate as well as the requirements under the law, those being the need to present a meritorious claim and the moving party's diligence in bringing both their claim and the petition to vacate. After reviewing "all of the pleadings [and] the depositions that were provided" the circuit court ultimately determined that although it "[does] not have all of the evidence before it," it was "unlikely" that Belle would be successful on the merits of her claim. On the issue of Belle's diligence, the circuit court determined that where the burden was on Belle to pursue her claims, she "failed to follow court orders and then would fail to appear." Finally, the circuit court clarified that the administration of Sadie's estate was transferred back to the original calendar only for the purposes of ruling on the petition to vacate and that therefore the case would be transferred back to the new calendar to which it had been transferred prior to the motion to vacate for further proceedings. This appeal is from this order.

¶ 28                                II. JURISDICTION

¶ 29    The circuit court entered its final judgment in this case on January 11, 2019, and Belle filed her timely notice of appeal on February 11, 2019. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) governing appeals from final judgments entered by the circuit court in civil cases.

¶ 30                                III. ANALYSIS

¶ 31    On appeal, Belle contends that the circuit court abused its discretion in dismissing her section 2-1401 petition when it held that Belle was "unlikely" to succeed on the merits of her claim and that she failed to diligently pursue her claim. Belle further argues that the circuit court

10

demonstrated bias in its rulings and therefore should have recused itself before deciding her petition to vacate.

¶ 32                    A. Requirements of a Section 2-1401 Petition

¶ 33    The Illinois Code of Civil Procedure authorizes the circuit court to vacate or modify a final order or judgment in civil and criminal proceedings. 735 ILCS 5/2-1401 (West 2016); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Filing a petition under section 2-1401 commences a new proceeding and is not merely a continuation of the original proceeding. *Manning v. Meier*, 114 Ill. App. 3d 835, 840 (1983).

¶ 34    Where, as here, a petitioner asserts a fact-dependent challenge to a judgment, the petitioner must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious claim or defense, (2) due diligence in presenting this claim or defense, and (3) due diligence in filing their section 2-1401 petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986). The petitioner must establish these elements by a preponderance of the evidence, and the decision to grant or deny the petition "lies within the sound discretion of the circuit court, depending on the facts and equities presented." *Id.* Accordingly, this court will disturb the decision of the circuit court only if it determines that the circuit court abused its discretion. *Warren County*, 2015 IL 117783, ¶ 37. A petitioner must satisfy all three elements of a section 2-1401 petition (*Id.* ¶ 51) and it would therefore be sufficient to affirm the circuit court's decision based solely on the absence of any of those elements. An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the position adopted by the circuit court. *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 88. We address each of the elements in turn.

¶ 35                          1. Meritorious Claim

¶ 36    We begin with the question of whether Belle had a meritorious claim or defense. Belle argues that the circuit court abused its discretion because it "relied on a mistaken standard" in determining that it was "unlikely" that Belle would succeed on the merits of her claim. Belle suggests that the circuit court did not need to "make a 'final determination' on 'all the evidence' " in order to rule on the merits of her petition to vacate, rather, the circuit court need only determine whether Belle "demonstrated by a preponderance of the evidence that she had meritorious claims." Belle is correct that a preponderance of the evidence is the proper standard for evaluating the merits of a petitioner's claim. *Airoom, Inc.*, 114 Ill. 2d at 221.

¶ 37    Belle relies on *Zilvitis v. Szczudlo* to support her argument that, although the "backup" quitclaim deeds were not notarized when Sadie executed them, this should not undermine their validity because under Illinois law a deed does not have to be notarized to be valid. *Zilvitis*, 409 Ill. 252, 258 (1951). This is a correct statement of the law, however the party seeking to demonstrate the validity of the deed must also be able to show that it satisfies the other elements of the Illinois Conveyances Act. 765 ILCS 5/1 (West 2016); see *In re Estate of Shedrick*, 122 Ill. App. 3d 861, 864 (1984).

¶ 38    To convey real property in Illinois, it "must affirmatively appear that the grantor's intention was that the deed should pass title at the time [of delivery] and that he should lose all control of it." *Seibert v. Seibert*, 379 Ill. 470, 478 (1942). Even where a deed is executed, "it conveys no title *** unless it be proven that the deed was delivered." *Nofftz v. Nofftz*, 290 Ill. 36, 41 (1919). The burden of proof rests on the grantee "to establish not only the execution but the delivery of the deed," and where the grantee merely "had the deed in her hands, that does not, of itself, establish a delivery." *Id.* at 41-42. "[W]here the facts neither show an actual acceptance nor justify a presumption of law that the deed has been accepted, the title does not pass." *Seibert*, 379 Ill. at 478

¶ 39 Belle failed to present evidence that Sadie intended to pass title at the time she executed the deeds. Belle testified that although Mr. Romer purportedly gave her and Sadie the "backup" quitclaim deeds in 2002, Sadie did not execute the deeds for another ten years and further decided not to record the deeds after they were executed because doing so "would change the status on the Summerdale house for the tax purposes." Based on this evidence, it would seem Sadie did not want to pass title or release control of the property because she did not want to lose tax benefits. And indeed, Sadie held herself out as the owner of the Summerdale property during an administrative hearing in 2009 and Mr. Romer testified that in the course of his representation he understood Sadie to be the sole owner of the Summerdale property as Sadie never indicated that Belle was an owner of the property. Casting further doubt on Sadie's intent to pass title at the time of the delivery is the fact that the grantor-grantee statement that Belle affixed to her "backup" quitclaim deeds is dated April 11, 2000—two years before Mr. Romer purportedly gave Belle and Sadie the deeds and twelve years before Sadie signed the deeds. This date corresponds to an earlier conveyance of property between Belle and Sadie, not the conveyances that Belle is relying on here.

¶ 40 Accordingly, we cannot say that "no reasonable person would take the position adopted by the circuit court" when it determined that it was unlikely that Belle would succeed on the merits of her claim and thus failed to satisfy her burden. *Ciborowski*, 2016 IL App (1st) 143352, ¶ 88.

¶ 41 2. Diligence in Bringing the Claim

¶ 42 Belle's arguments that she was diligent rest in large part on what she says were the "extraordinary circumstances that mitigate any alleged lack of diligence." While "a party must follow the progress of its case, and a section 2-1401 petition will not relieve a party of the consequences of its attorney's neglect of a matter" (*Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 105 (2006)), the circuit court " 'may also consider equitable considerations to relax

13

the applicable due diligence standards under the appropriate limited circumstances' " (*Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶ 62 (quoting *Warren County*, 2015 IL 117783, ¶ 51)). Belle maintains that the Supervised Administrator failed to provide Belle with notice of pleadings and hearing dates, "misrepresented" her conduct, and that "principles of equity dictate that the probate court consider those circumstances."

¶ 43     We first address Belle's argument that the Supervised Administrator's failure to provide notice of certain hearing dates contributed to, and should therefore excuse, her lack of diligence. Specifically, Belle cites to the fact that she did not receive notice of the February 2, 2017, hearing and that following the dismissal of her claim, she did not receive notice of any subsequent hearings or motions until she was served with the complaint to quiet title in August 2017. While "[d]ue process of law requires that a party be accorded procedural fairness, *i.e.*, given notice and an opportunity to be heard" only "[p]arties who have properly appeared in an action are entitled to notice of any impending motions or hearings." *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 62 (2004); see also, *Airoom*, 114 Ill. 2d at 226 (finding that the defendant was not entitled to notice of a default judgment where they failed to file an appearance).

¶ 44     The record supports Belle's contention that she did not receive notice of the February 2, 2017, hearing. However, the record also shows that Belle had actual notice of, but chose not to attend, the prior hearing on January 5, 2017, when the date for the February 2 hearing was set. Moreover, Belle did not obtain new counsel after the court granted her previous counsel's motion to withdraw nor did Belle ever file a *pro se* appearance in the proceeding and, as our case law makes clear, Belle was not entitled to notice where she failed to file a proper appearance. Thus, these circumstances do not support Belle's request to excuse her own lack of diligence based on insufficient notice.

¶ 45    Turning next to the allegations relating to Belle's own conduct during the proceeding, we note that there is no bright-line rule that determines whether a petitioner acted diligently in pursuing their claim. *Paul*, 223 Ill. 2d at 99. "Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all the circumstances." *Id.* at 99-100. This includes considering the conduct of both the petitioner and their attorney. *Airoom*, 114 Ill. 2d at 222. *Paul* suggests that because there is no "temporal cutoff for judging due diligecue," the court should base its determination on the facts and circumstances of each case. *Paul*, 223 Ill. 2d at 101. Though Belle relies on *Paul*, the facts in that case and the court's exercise of its equitable powers under those circumstances are distinguishable from her own.

¶ 46    In *Paul*, our supreme court affirmed the grant of a section 2-1401 petition where two complaints were also subject to the administration of the petitioner's personal bankruptcy proceeding and the petitioner did not have the authority to prosecute her complaints in the circuit court without the bankruptcy trustee's approval. *Id.* at 105. Therefore, equity demanded the dismissals be vacated because once the complaint cases were placed on the circuit court's bankruptcy calendar, the petitioner "could reasonably assume that no activity could or would occur in that court *** [t]hus plaintiff *** had no reason to believe that a check of the Cook County court docket was necessary." *Id.* at 105-06.

¶ 47    In this case, in contrast, Belle had no reason to believe that the administration of Sadie's estate would stop when she failed to appear in court. Belle admits that she received notice of the February 2, 2017, order stating that her claim would be heard at the next status hearing on February 10, 2017, and directing Belle to appear for the hearing or be subject to sanctions. Belle did not appear for the hearing on February 10, 2017, at which point the court dismissed her claim in full and granted the Supervised Administrator possession of the Properties. Belle did not appear before

the court again for eight months—until October 13, 2017—and during her voluntary absence from the proceeding, the circuit court allowed the Supervised Administrator to begin the eviction processes and proceed with a suit to quiet title on the Properties.

¶ 48    The duration of Belle's absence is not itself dispositive of her lack of diligence. See *Paul*, 223 Ill. 2d at 101. However, the duration of Belle's absence coupled with the circuit court's own observations about Belle's conduct at the onset of the proceeding would support the conclusion that the "chronological development of the litigation *** demonstrates a lack of diligence." *Airoom*, 114 Ill. 2d at 223. During oral arguments on the petition to vacate, the circuit court noted that early in the proceedings Belle "was completely noncooperative and even upon questioning by the Court refused to answer questions directly as it related to the Summerdale property."

¶ 49    This case is also very different than *Halle v. Robertson*, 219 Ill. App. 3d 564 (1991), on which Belle relies. In *Halle*, the court took notice of a series of procedural inequities that followed from the plaintiff's counsel's failure to inform the court of the defendant's counsel's intention to file a limited special appearance to contest the issue of service which ultimately resulted in a default judgment against the defendant. *Id.* at 567. Specifically, the appellate court emphasized the incorrect recitation of evidence by the plaintiff, the use of inadmissible evidence by the plaintiff, the plaintiff's failure to provide notice of the default judgment to the defendant in a timely manner, and the fact that the court was not advised of ongoing discussions between counsel for the plaintiff and defendant. *Id.* at 570.

¶ 50    There is little evidence in the record of the type of procedural inequities that warranted granting the section 2-1401 petition in *Halle*. Belle correctly notes that she asserted her ownership interest in the Properties as part of her claim filed on August 24, 2016. While the Supervised Administrator incorrectly claimed that Belle first asserted her ownership interest in the October

24, 2016, emergency petition to vacate, this discrepancy falls short of an "incorrect recitation of evidence." In fact, Belle did not provide the circuit court or the Supervised Administrator with copies of the "backup" quitclaim deeds until October 2016, when she attached them to her emergency petition to vacate.

¶ 51    Belle's case is similar to *Harris*, where the plaintiff also appealed to the equitable powers of the court, argued that any lack of diligence should be excused due to the conduct of the attorneys who represented her, and relied on her counsel to act on her behalf while dealing with substantive legal issues during the course of the proceeding. *Harris*, 2015 IL App (1st) 133017, ¶ 61. This court held in *Harris,* "even if the trial court was *permitted* to relax the due diligence requirements, we cannot say that the trial court abused its discretion in declining to do so in this case." (Emphasis in original.) *Id.* ¶ 63. So we hold here.

¶ 52    This court is sympathetic to Belle's difficulty in retaining counsel. However, the record indicates that Belle failed to monitor the progress of her claim throughout the case, including when she was represented by counsel. As discussed above, Belle retained counsel for the first time in June 2016, five months after the probate proceeding began. In her affidavit, Belle claims that her first attorney told her that she would "file her appearance and file a motion for declaratory judgment before July 1, 2016." Yet, Belle also admits that she "was aware that [her counsel] had delayed the filing of the claim."

¶ 53    Belle was also personally present at the hearing on November 1, 2016, where the court granted a motion filed by her second attorney to extend the deadline to respond to the Supervised Administrator's citation to discover information to November 22, 2016. Belle admits in her affidavit that she was working with her second attorney to prepare her responses, but that she was aware that the responses had not been filed by November 30, 2016, that her attorney informed her

on December 2, 2016, that he had not contacted counsel for the Supervised Administrator to inform him of the delay, and that she believed that her attorney was going to present the documents at a hearing on December 7, 2016. Belle was also aware of the hearing on January 5, 2017, though she did not attend. As discussed above, Belle received notice that her claim would be heard on February 10, 2017, and was informed her failure to appear for that hearing would result in sanctions by the circuit court. Given Belle's knowledge of her attorney's conduct and that she had actual notice of the consequences of her failure to appear at the hearing on February 10, 2017, we do not find that the facts of her case are those "limited circumstances" which warrant equitable relief. Therefore, we find no abuse of discretion in the circuit court's determination that Belle failed to exercise diligence in pursuing her claim.

¶ 54                    3. Diligence in Filing the Section 2-1401 Petition

¶ 55    The final element a petitioner must demonstrate is diligence in filing a section 2-1401 petition. *Harris*, 2015 IL App (1st) 133017, ¶ 64. Belle's briefs do not explicitly contend that she was diligent in filing her section 2-1401 petition nor did the circuit court issue a ruling on Belle's diligence in filing her section 2-1401 petition.

¶ 56    Belle filed her petition to vacate on March 6, 2018. Belle sought relief from six orders dated June 15, 2017, March 13, 2017, February 10, 2017, February 2, 2017, October 7, 2016, and April 13, 2016. While the date of each order falls within the requisite statutory timeframe, we note that the petition to vacate was filed nine months after the circuit court's most recent order on June 15, 2017, and 23 months after the circuit court's first order issued on April 13, 2016. While this delay alone may not reflect a lack of diligence, the trial court's finding as to the other elements were not an abuse of discretion and all elements must be satisfied. *Warren County*, 2015 IL 117783, ¶ 51. Because we find that the circuit court did not abuse its discretion when it determined

that Belle failed to diligently pursue her claim and was unlikely to succeed on the merits, we find no abuse of discretion.

¶ 57                                    B. Recusal

¶ 58    Belle also argues that the circuit court should have recused itself before ruling on her petition to vacate. Belle never raised this argument during the course of the probate proceeding, nor did her concerns about the circuit court's alleged bias cause her to move for a new judge. Generally speaking, parties are "not entitled to assert for first time on appeal that [they] had been denied fair hearing because [a] trial judge had not recused himself *sua sponte* from presiding." *People v. Peaslee*, 7 Ill. App. 3d 312 (1972) (abstract of opinion). In this case Belle argues that the basis for recusal was first raised by the probate judge when she ruled on the petition to vacate. While we are not fully convinced that Belle has not waived this argument, we will consider this claim on the merits.

¶ 59    "Allegations of judicial bias must be viewed in context and should be evaluated in terms of the trial judge's specific reaction to the events taking place." *People v. Jackson*, 205 Ill. 2d 247, 278 (2001). "A trial judge is presumed to be impartial" and the party who alleges the bias or prejudice bears the burden of overcoming this presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002).

¶ 60    Belle argues that evidence of impartiality is "apparent in the probate court's findings because it did not address [Belle's] specific allegations or the evidence she put forth in support of them," "offered an unsubstantiated opinion" about the allegations in her pleadings, and failed to explain why her claim was dismissed.

¶ 61    However, as our supreme court made clear in *Eychaner*, charges of bias are insufficient when they arise "in the context of allegedly erroneous findings and rulings." *Id.* at 281. A judge's

19

rulings will seldom support a claim of judicial bias or partiality. Rather, the party making the charge of prejudice "must present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* at 280. The evidence of bias that Belle presents is focused on the court's rulings and therefore does not support her claim.

¶ 62    To the extent that Belle suggests that the probate judge recognized that she was biased and recused herself from making this ruling, she is simply mistaken. The record reflects that this case was randomly reassigned when a new judge had joined the probate division. The original judge had already taken the section 2-1401 petition under advisement and therefore the case was returned to her for purposes of ruling on the petition. After that ruling, the case was sent back to the calendar of the new judge to whom it had been reassigned. The original probate judge explained: "I'm not recusing myself. I'm transferring it back because it was randomly reassigned." The circuit court earlier in that same ruling had suggested that she would "recuse" herself from future rulings and acknowledged that Belle "has a perception of what occurred in court, and she is entitled to her opinions, and *** may feel that there's an appearance that [the circuit court] may not be fair to her in the ongoing proceedings." However, by recognizing Belle's own perceptions of the court's impartiality the court was not suggesting any actual impartiality or bias on the part of the court. As she clarified, she said she "would recuse" herself from future participation, not that she was recusing herself from the case. These actions do not support Belle's claim that the court was biased or should have recused itself from ruling on this petition.

¶ 63                                IV. CONCLUSION

¶ 64    For the reasons stated above, we affirm the judgment of the circuit court.

¶ 65    Affirmed.