NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220960-U

NO. 4-22-0960

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| YOSEPH FREDMAN, as Independent Executor of the Estate of Freyda Fredman, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Peoria County |
| v. | ) | No. 12L311 |
| OSF HEALTHCARE SYSTEM d/b/a OSF Saint Francis | ) | |
| Medical Center, an Illinois Not-for-Profit Corporation; | ) | Honorable |
| KIM M. WAGNER, R.N.; and KAY A. | ) | Michael D. Risinger and |
| DANIEL, | ) | Frank W. Ierulli, |
| Defendants-Appellants. | ) | Judges Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice DeArmond and Justice Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court reversed an order granting plaintiff's petition to vacate an order voluntarily dismissing his case, as plaintiff failed to prove fraudulent concealment to justify such relief.

¶ 2       In 2012, plaintiff—Yoseph Fredman, as independent executor of the estate of Freyda Fredman, deceased—filed a medical malpractice action against defendants—OSF Healthcare System d/b/a OSF Saint Francis Medical Center, Kim M. Wagner, R.N., and Kay A. Daniel. In May 2017, plaintiff voluntarily dismissed the action without prejudice. In July 2019, plaintiff petitioned to vacate the voluntary dismissal order pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)) based on alleged fraud during the discovery process. The trial court granted this petition following an evidentiary hearing. Defendants appeal, and we reverse the judgment.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Events Leading up to the Voluntary Dismissal

¶ 5            On October 24, 2010, Freyda Fredman died at OSF Saint Francis Medical Center. On October 24, 2012, plaintiff, represented by James LeFante of LeFante Law Offices, P.C., filed this medical malpractice action. Rhonda Ferrero-Patten of Hinshaw & Culbertson LLP (Hinshaw) appeared for defendants. Ferrero-Patten's associate, Natasha Steele, now known as Natasha Patel, assisted with the defense. For purposes of this disposition, we will use Patel's current name.

¶ 6            The events giving rise to this appeal center around defendants' responses to plaintiff's discovery requests in 2015. Invoking the protections of the Medical Studies Act (735 ILCS 5/8-2101 *et seq.* (West 2014)), defendants produced the following privilege log:

| Date: | Description | Possible Privilege(s) |
|---|---|---|
| 10/24/10- 10/28/10 | Peminic Report | Confidential Peer Review Information  Medical Studies Act |

After the attorneys exchanged correspondence, plaintiff moved to compel production of "Peminic Incident Reports." Plaintiff set that motion for hearing on March 25, 2015.

¶ 7            On March 24, 2015, Patel emailed LeFante what she labeled "the peminic report." This was a one-page document containing defendant Daniel's description of the incident giving rise to the lawsuit. On March 25, 2015, the matter proceeded to a hearing before Judge Stephen Kouri. LeFante requested reimbursement of attorney fees in connection with his efforts to obtain this report. Patel explained to the trial court that the "Peminic report" was an incident report created for purposes of quality review. Patel also said, "I did produce it." The court granted plaintiff's motion to compel but reserved the issue of sanctions, reasoning that it wanted to "see how matters progress in this case." The court invited LeFante to remind the court of this reserved motion if plaintiff had occasion to seek sanctions again.

¶ 8    Incidentally, LeFante was simultaneously litigating another case in Peoria County with Ferrero-Patten and Patel as opposing counsel: *Simmons v. OSF Healthcare System*, No. 14-L-167. On April 6, 2015, Ferrero-Patten disclosed to LeFante a one-page document in *Simmons* that she called a "Peminic Report."

¶ 9    The parties continued to litigate the case at bar for another two years. On May 12, 2017, plaintiff voluntarily dismissed this action without prejudice. The record does not reflect exactly why plaintiff did so. However, plaintiff acknowledged in his response to a motion filed much later that "the evidence, as it was known to him [in 2017], was insufficient to present a successful case to a jury."

¶ 10    B. The *Simmons* Trial

¶ 11    At some point, another attorney from Hinshaw, Jesse Placher, took over the defense of the *Simmons* action from Ferrero-Patten and Patel. *Simmons* went to trial in December 2018. During opening statements on December 10 or 12, 2018, Placher displayed for the jury a three-page Peminic report. The first page was slightly different from the version that Ferrero-Patten had given LeFante in 2015. Specifically, unlike the version of the report in LeFante's possession, this report had (1) page numbers and (2) some text in the "narrative description" field that bled onto the second page. Placher evidently was unaware that LeFante had not previously seen this full three-page report. LeFante's experience with the *Simmons* case led him to believe that Ferrero-Patten and Patel likewise had not produced the full Peminic report in the case at bar.

¶ 12    C. The Section 2-1401 Petition, Dismissal of the Petition, Appeal, and Remand

¶ 13    On July 3, 2019, plaintiff filed a petition to vacate the May 12, 2017, voluntary dismissal order in this case pursuant to section 2-1401 of the Code. Plaintiff alleged that

defendants, through Ferrero-Patten and Patel, fraudulently altered the Peminic incident report and failed to produce the entire report to plaintiff. Plaintiff sought to reopen the case and to impose sanctions against defendants and their counsel.

¶ 14 Defendants moved to dismiss the section 2-1401 petition pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). In August 2019, Judge Jodi Hoos denied both plaintiff's petition and defendants' motion to dismiss without holding an evidentiary hearing. In May 2021, the Third District remanded the case for further proceedings. *Fredman v. OSF Healthcare System*, No. 3-19-0579 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)). The appellate court deemed plaintiff's petition sufficient to state a claim and determined an evidentiary hearing was necessary to address the issues raised by the parties.

¶ 15 D. The Evidentiary Hearing

¶ 16 On remand, Judge Michael Risinger held the evidentiary hearing ordered by the Third District. The court heard testimony from Patel, Ferrero-Patten, and LeFante. As of the time of that hearing, Ferrero-Patten and Patel no longer worked at Hinshaw.

¶ 17 The evidence showed that "Peminic" was the brand name of a computer database that defendants had once used. It was not a specific document or set of documents. Medical providers could document adverse events in the database, similar to what commonly might be thought of as an incident report. In the present case, for example, defendant Daniel entered a narrative description of her interactions with decedent, which was contained within the one-page document that defendants disclosed to plaintiff in 2015. What plaintiff did not know before he voluntarily dismissed this case was that other hospital employees made additional entries into the database. We will refer to the information that defendants did not disclose to plaintiff as the "additional Peminic data."

¶ 18      Ferrero-Patten and Patel insisted they had not intentionally deceived plaintiff. Ferrero-Patten acknowledged she should have notified plaintiff of the existence of the additional Peminic data by giving him a supplemental privilege log which invoked the Medical Studies Act. Ferrero-Patten testified she believed she had done so. She claimed she did not realize her mistake until the issue came up during the *Simmons* trial.

¶ 19      Having never seen the additional Peminic data, LeFante did not testify in detail why that data would have changed plaintiff's decision to dismiss the case voluntarily in 2017. However, LeFante outlined generally what actions he would have taken had plaintiff known about both the additional Peminic data and a person whose name appeared in that data.

¶ 20      Although the parties debated many issues, only one warrants mentioning in light of our resolution of this appeal. Plaintiff invoked the doctrine of fraudulent concealment to justify his failure to file his section 2-1401 petition within two years of the voluntary dismissal order. The parties disagreed whether fraudulent concealment requires intentionally deceptive conduct, or whether an inadvertent discovery violation suffices.

¶ 21                E. The Ruling on the Section 2-1401 Petition

¶ 22      On April 22, 2022, Judge Risinger granted plaintiff's section 2-1401 petition. The court did not make express credibility findings or address all of the parties' arguments. The court determined that fraudulent concealment tolled the deadline for plaintiff to file a section 2-1401 petition. However, the court did not make an explicit finding as to whether defendants or their counsel committed an intentional discovery violation in connection with the additional Peminic data. In the court's view, even unintentional discovery violations implicated the doctrine of fraudulent concealment:

"It still comes down to this: Does it have to be intentional fraud, does it have to be—or is 'unintentional' just a mistake and oversight good enough? I think if I could read what the Appellate Court is telling me, it doesn't have to be an intentional fraudulent situation. It amounts to: That when you withhold something, that could be important."

After granting plaintiff's petition, the court directed defendants to produce the relevant Peminic data for an *in camera* review, as "there is a previously pending discovery request" for it. A docket entry for April 22, 2022, stated: "Ptlft's [*sic*] 2-1401 is granted and the case is reinstated. Deft's 619 MTD is denied. Deft ordered to turn over the entire Peminic report to the Court for *in camera*."

¶ 23        On April 26, 2022, the trial court told the parties it had reviewed the materials *in camera*. Defense counsel questioned whether the court had yet made a final ruling on the section 2-1401 petition, thus starting the time for filing a notice of appeal. The court responded, "I've announced how I'm going to rule, but I haven't actually ruled." The court said it intended to issue a written ruling on plaintiff's section 2-1401 petition. Realizing that the docket entry from April 22, 2022, could be considered a final, written order on the section 2-1401 petition, the court vacated that docket entry. The court expressed its intent to give the appellate court "something much more clean and tight like a formal order." The court decided to reconvene on a future date after reviewing depositions taken before plaintiff had voluntarily dismissed the case.

¶ 24        Over the following months, the trial court conducted *ex parte* discovery reviews with the parties' consent, and plaintiff filed a memorandum in support of his request for sanctions. Over plaintiff's objection, the court granted defendants' motion to file under seal the Peminic data the court had previously reviewed *in camera*.

¶ 25 The record contains an order that was purportedly entered on October 21, 2022, but which was file-stamped on October 24. The order states:

"This matter was returned to this Court upon Remand from the Appellate Court to conduct a full evidentiary hearing. After several hearings and the Court being fully advised, the Court grants Pltf's 2-1401 motion and denies Deft's 2-619 motion.

Pltf's voluntary dismissal is vacated. This case is reinstated."

On October 25, 2022, defendants timely appealed this order pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016) (allowing for appeals from judgments or orders "granting or denying any of the relief prayed in a petition under section 2-1401 of the [Code]").

¶ 26 The trial court subsequently began holding an evidentiary hearing on plaintiff's request for sanctions. However, when a further discovery dispute arose relating to LeFante's time records to substantiate plaintiff's request for attorney fees, Judge Risinger was unable to adjudicate the issue of sanctions before he retired from the bench.

¶ 27 F. Subsequent Events

¶ 28 Defendants attached a supplemental appendix to their reply brief consisting of (1) an order entered in this case on July 18, 2023 and (2) a transcript of the July 18 proceedings. This appendix shows that after defendants appealed Judge Risinger's order granting plaintiff's section 2-1401 petition, Judge Frank Ierulli presided over the case. On July 18, 2023, Judge Ierulli entered an order denying the parties' competing motions for sanctions and making findings in accordance with Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 29 In ruling on plaintiff's request for sanctions, Judge Ierulli made the following findings relevant to this appeal. The additional Peminic data is privileged under the Medical

Studies Act. Nevertheless, defendants committed a discovery violation by failing to supplement their privilege log to identify the additional Peminic data. The court had "no reason to believe" that Ferrero-Patten and Patel were untruthful in their testimony. The court did not believe that defendants' failure to amend their privilege log "rises to the level of [Illinois Supreme Court Rule] 137 sanctions for false filing or frivolous filings." The court determined that the discovery violation was unintentional: "I don't believe that there was the proper—and I know it's not *mens rea*, but the proper intent to rise to the level of a 137 sanction." The court found that Ferrero-Patten "apparently *** forgot and failed" to supplement the privilege log, which was an "oversight" that "led to where we are today." The court did not find any bad faith in connection with defendants' "error."

¶ 30          We take judicial notice of this court's records showing that both parties appealed Judge Ierulli's order denying their competing requests for sanctions. That appeal was docketed as No. 4-23-0711. The parties have not yet fully briefed that appeal.

¶ 31                          II. ANALYSIS

¶ 32          Defendants challenge the order granting plaintiff's section 2-1401 petition on numerous grounds. For the following reasons, we deem dispositive one issue addressed by the parties. The trial court applied an improper standard by determining that fraudulent concealment encompasses unintentional discovery violations.

¶ 33          Section 2-1401 of the Code is "a comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. A petition pursuant to section 2-1401 commences "an independent and separate action from the original action." *Walters*, 2015 IL 117783, ¶ 31. To justify relief from a judgment, the petitioner must establish by

a preponderance of the evidence "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986). Ordinarily, the deadline for filing a petition pursuant to section 2-1401 is two years from the date of the judgment or order being challenged. 735 ILCS 5/2-1401(c) (West 2018). However, "[t]ime during which *** the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2-1401(c) (West 2018).

¶ 34 Here, defendants argue for an unnecessarily convoluted standard of review, largely by citing cases that do not address section 2-1401 of the Code. The law is well-established that where a petition "presents a fact-dependent challenge to a final judgment or order," we review the "ultimate decision on the petition" for an abuse of discretion. *Walters*, 2015 IL 117783, ¶ 51. One way a court may abuse its discretion is by applying an incorrect legal standard. See *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006) (" '[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts.' ") (quoting *People v. Ortega*, 209 Ill. 2d 354, 360 (2004)).

¶ 35 As an initial matter, we reject plaintiff's contention that the law-of-the-case doctrine precludes defendants from challenging the timeliness of the section 2-1401 petition. Plaintiff argues that the Third District's 2021 summary order settled that issue in his favor. Contrary to what plaintiff argues, the Third District did not hold that plaintiff's petition was timely. The court merely held that the petition stated a cause of action under section 2-1401 and that the parties' claims required an evidentiary hearing. Moreover, plaintiff invokes the doctrine of fraudulent concealment to justify his failure to challenge the voluntary dismissal order within two

years. Of course, it is incumbent on plaintiff to prove his allegations, and the point of the Third District ordering an evidentiary hearing was to give plaintiff the opportunity to do so.

¶ 36 There is no question that defendants committed a discovery violation by failing to inform plaintiff of the existence of the additional Peminic data. However, at the evidentiary hearing on plaintiff's section 2-1401 petition, one of the disputed issues was whether fraudulent concealment requires intentionally deceptive conduct. When orally granting plaintiff's section 2-1401 petition on April 22, 2022, Judge Risinger made no express finding as to whether defendants or their counsel intentionally concealed the additional Peminic data from plaintiff. Rather, it seems the court accepted plaintiff's argument that he did not need to prove intentional deception. In relevant portion, the court stated:

> "It still comes down to this: Does it have to be intentional fraud, does it have to be—or is 'unintentional' just a mistake and oversight good enough? I think if I could read what the Appellate Court is telling me, it doesn't have to be an intentional fraudulent situation. It amounts to: That when you withhold something, that could be important."

¶ 37 Plaintiff maintains that Judge Risinger made a finding with respect to intent on November 1, 2022—after defendants had filed a notice of appeal from the order granting the section 2-1401 petition. In the comments plaintiff references, Judge Risinger said that Patel "chose not to disclose" the existence of the additional Peminic data to Judge Kouri at the March 25, 2015, hearing, which "creates a problem for the defense" that would be addressed in connection with adjudicating plaintiff's request for sanctions. Judge Risinger added that Patel "erroneously represented to [Judge Kouri] that it was only one page." However, Judge Risinger then indicated he had *not* decided whether Patel was intentionally deceptive. Specifically, Judge Risinger said

Patel was either "being intentionally deceptive" or she "was too stupid to know the difference that there was more there that was part of *** the Peminic data." Furthermore, as defendants note, Judge Risinger made remarks on November 9, 2022, suggesting he did not believe Ferrero-Patten was intentionally deceptive ("That's what I believe happened with [Ferrero-Patten]. She was going to follow up, and she just forgot."). The totality of the record underscores that Judge Risinger never made a clear, express finding as to whether the discovery violation at issue was the result of intentionally deceptive conduct.

¶ 38 The caselaw is well-settled: "To prove fraudulent concealment in a section 2-1401 petition, the petitioner must prove by clear and convincing evidence that the other party intentionally misstated or concealed a material fact that he or she had a duty to disclose and that the petitioner detrimentally relied on that statement or conduct." *In re Marriage of Herrera*, 2021 IL App (1st) 200850, ¶ 49; see *In re Marriage of Brubaker*, 2022 IL App (2d) 200160, ¶ 29 (reiterating the requirement that concealment must be intentional); *In re Marriage of Benjamin*, 2017 IL App (1st) 161862, ¶ 20 (same). This is consistent with our supreme court's pronouncements that fraudulent concealment requires "affirmative acts" of concealment with a "design" to conceal. See *People v. Coleman*, 206 Ill. 2d 261, 290 (2002) ("To make a successful showing of fraudulent concealment, the [petitioner] must 'allege facts demonstrating that his opponent affirmatively attempted to prevent the discovery of the purported grounds for relief.' ") (quoting *People v. McLaughlin*, 324 Ill. App. 3d 909, 918 (2001)); *People v. Madej*, 193 Ill. 2d 395, 402 (2000) ("To toll the limitation period, the alleged fraud must consist of 'affirmative acts or representations designed to prevent discovery of the cause of action or ground for relief.' ") (quoting *Crowell v. Bilandic*, 81 Ill. 2d 422, 428 (1980)).

¶ 39　　　　This caselaw comports with the plain meaning of the word "concealment," which, by definition, contemplates intentional deceit. See Black's Law Dictionary (11th ed. 2019) (defining "concealment," in relevant part, as "[t]he act of preventing disclosure or refraining from disclosing; esp., the injurious or intentional suppression or nondisclosure of facts that one is obliged to reveal"). It also comports with the typical meaning of "fraud." See *Exline v. Weldon*, 57 Ill. 2d 105, 110 (1974) ("The concept of fraud 'implies a wrongful intent—an act calculated to deceive.' ") (quoting *Dahlke v. Hawthorn, Lane & Co.*, 36 Ill. 2d 241, 245 (1966)). The import of these authorities is that a person cannot fraudulently conceal information without both knowing he or she was doing so and acting intentionally.

¶ 40　　　　In arguing to the contrary, plaintiff relies heavily on *Lubbers v. Norfolk & Western Ry. Co.*, 105 Ill. 2d 201 (1984), and *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273 (1982). Both of those cases involved appeals from orders dismissing, on the pleadings, petitions to vacate judgments entered on jury verdicts. That procedural posture required our supreme court to accept as true the respective plaintiffs' well-pleaded allegations that the defendants committed willful discovery violations, leading to adverse judgments against the plaintiffs at trial. Specifically, in *Lubbers*, the supreme court noted it was addressing "allegations of conduct which was *intended to* and did frustrate the discovery process and impeded [the plaintiff] in his attempts to formulate a theory of the case and a strategy for trial." (Emphasis added.) *Lubbers*, 105 Ill. 2d at 213. In *Ostendorf*, the court similarly stated: "Taking, as we must, the petition's allegations as true, we must assume that International Harvester had knowledge of the existence of the reports yet failed to produce them when requested." *Ostendorf*, 89 Ill. 2d at 281-82. By contrast, the present appeal comes after an evidentiary hearing, so the sufficiency of the pleadings is not at issue.

¶ 41 Procedural distinctions aside, *Lubbers* and *Ostendorf* are consistent with the notion that fraudulent concealment requires intentionally deceptive conduct. *Lubbers* says that newly discovered evidence may justify vacating a judgment, "particularly where the prevailing party has engaged in fraudulent conduct *designed to conceal* the evidence from the petitioner before trial." (Emphasis added.) *Lubbers*, 105 Ill. 2d at 210. *Ostendorf* emphasizes that discovery "is not a tactical game to be used to obstruct or harass the opposing litigant" (*Ostendorf*, 89 Ill. 2d at 282), language that likewise contemplates intentional abuses of the discovery process.

¶ 42 Plaintiff emphasizes the following statement in *Ostendorf*: "We hold that, as a matter of law, failure to comply with the obligation of full and truthful disclosure imposed on litigants by our discovery rules constitutes fraudulent concealment for purposes of tolling a statute of limitations." *Ostendorf*, 89 Ill. 2d at 282. In context, it is clear the court was discussing the plaintiff's well-pleaded allegations supporting an inference of a willful discovery violation. It would be unreasonable to interpret this language as holding that every discovery violation constitutes fraudulent concealment, irrespective of the circumstances or the offending party's intent. Our supreme court has cautioned that general language in its opinions should not be ripped from its context and interpreted as creating broad rules. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 30.

¶ 43 Plaintiff also discusses *Boettcher v. Fournie Farms, Inc.*, 243 Ill. App. 3d 940 (1993). However, that case did not involve section 2-1401 of the Code, so we do not deem it instructive on the specific issue before us.

¶ 44 Accordingly, Judge Risinger applied an incorrect standard in ruling on plaintiff's section 2-1401 petition, insofar as he stated that unintentional discovery violations can constitute fraudulent concealment. Under these circumstances, we ordinarily would remand the matter with

directions to make factual findings under the correct legal standard. However, Judge Risinger has retired from the bench. Additionally, Judge Risinger's successor, Judge Ierulli, made express factual findings when ruling on sanctions that the discovery violation in connection with the additional Peminic data was unintentional. Under these unusual circumstances, there would be no point in remanding this case for Judge Ierulli to make those same factual findings again.

¶ 45        To be sure, one could reasonably conclude from the record that Ferrero-Patten and Patel intentionally used unfair and misleading litigation tactics in connection with the additional Peminic data. Alternatively, one might reasonably credit Ferrero-Patten's testimony that she mistakenly failed to provide plaintiff with an amended privilege log identifying the additional Peminic data. Reviewing the "cold" record, we cannot say that one conclusion is more reasonable than the other.

¶ 46        Ultimately, Judge Ierulli's findings about lack of intent prove fatal to plaintiff's petition to vacate the May 12, 2017, voluntary dismissal order. Plaintiff learned of the probable existence of additional Peminic data in December 2018. However, plaintiff did not file a section 2-1401 petition until July 2019. By waiting to file the petition until more than two years after the entry of the challenged order, plaintiff placed on himself the additional burden of proving fraudulent concealment. Given that it has been determined that the subject discovery violation was unintentional, plaintiff did not meet his burden to prove fraudulent concealment. Accordingly, we must reverse the judgment granting the section 2-1401 petition.

¶ 47                        III. CONCLUSION

¶ 48        For the reasons stated, we reverse the trial court's judgment.

¶ 49        Reversed.