2025 IL App (2d) 240578-U
No. 2-24-0578
Order filed January 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1044 |
| LUIS LOYO, | ) ) | Honorable Donald M. Tegeler, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1  *Held*: The circuit court's detention order was not erroneous, where the State met its burden to show that defendant committed a detainable offense and defendant's dangerousness arguments are forfeited. Affirmed.

¶ 2  Defendant, Luis Loyo, requests that we vacate the circuit court's order granting the State's petition to deny him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1,

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code of Criminal

2023) (amending various provisions of the Act); *Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant contends that the State failed to meet its burden of proving that he committed a detainable offense and that he posed a threat to the safety of any person or the community. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4      On May 21, 2024, defendant was charged with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2022) (discharging a firearm)), aggravated discharge of a firearm (*id*. § 24-1.2(a)(2)), and three counts of aggravated use of a weapon (AUUW) (*id*. § 24-1.6(a)(1) & (2)) (no Firearm Owner Identification (FOID) Card or Firearm Concealed Carry License (FCCL)). The charges stemmed from an altercation on May 19, 2024, at 551 N. McLean Boulevard in Elgin. After the altercation, police located three Hispanic males, including defendant, near 534 N. McLean Boulevard. A "showup" was conducted, and eyewitnesses confirmed all three males were involved in the shooting. Thereafter, defendant was arrested.

¶ 5      On May 21, 2024, the State petitioned to deny defendant pretrial release, alleging that he was charged with detainable offenses, and his pretrial release posed a real and present threat to any person or the community. 725 ILCS 5/110-6.1(a)(6) (West 2022). The petition further noted that on May 13, 2024, defendant was adjudicated delinquent for aggravated battery (great bodily harm) and mob action in Kane County case No. 23-JD-107. Defendant was sentenced to 24 months' juvenile probation.

---

Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 6     At a hearing on the State's petition, the police synopsis from this case was admitted into evidence, along with a social history investigation report, two no-contact orders, and the juvenile synopsis sheet from case No. 23-JD-107. The police synopsis related that, on May 19, 2024, after dropping off his child, Darrel Robinson was confronted by a heavy-set Hispanic male flashing gang signs. The man tried to punch Robinson and missed. Robinson then punched him, and the man fell to the ground. Immediately after, another Hispanic male wearing a gray shirt and black jeans shot Robinson in the abdomen/groin area. Robinson told police that he saw both men near a Nissan. Robinson's wife told police a heavy-set Hispanic male shot Robinson. A Little Caesars' store manager described three suspects to police: a Hispanic male with long hair, wearing a green baseball cap, and who had tattoos on his face, one being a spade; a Hispanic male wearing all black clothing with a buzz cut; and a heavy-set Hispanic male who remained seated in the Nissan during the altercation. Police located defendant and two other Hispanic males, Edwin Vega and Jose Gavina, about one block away from the shooting. Eyewitnesses were taken to the scene of the arrest and confirmed that the detained men were involved in the shooting.

¶ 7     Police also reviewed surveillance footage from the area and saw Gavina cover his face with his shirt when passing the camera, revealing his waistband without a firearm. Defendant was seen holding an object near his right hip. The audio from the footage revealed that Gavina asked defendant, "Why did you pop it?", and defendant responded that he acted in self-defense.

¶ 8     When police arrested Gavina, a search was conducted and a loaded, uncased .40-caliber Glock 22 was found in his waistband. After the three suspects were arrested, they also provided statements to police. Vega stated that he, defendant, and Gavina were at Little Caesars picking up food, when defendant recognized someone from a prior shooting incident. Vega confronted this individual's parent, and a physical altercation erupted. Vega stated that no weapons were used in

the fight but, while he was fighting, he heard a gunshot and realized someone had been shot. Gavina told police that Vega got into a fight with a black male he did not recognize. While Vega and the man were fighting, Gavina began to flee the area and then he heard a gunshot. Gavina did not see who fired the shot, but he did ask defendant why he "popped him." Thereafter, Gavina and defendant jumped a fence and defendant handed the firearm to Gavina, which was later discovered by police. Defendant told police he had post-traumatic stress disorder (PTSD) from a prior shooting incident. He indicated that he feared for his life and that he acted in self-defense.

¶ 9    In argument, the State asserted that the proof was evident and presumption great that defendant committed aggravated battery with a firearm, aggravated discharge of a firearm, and AUUW. The State recounted that there was ample evidence that showed Robinson was shot, defendant was wearing the same clothes that eyewitnesses described the shooter wearing, he was found near the scene of the altercation immediately after it occurred, several eyewitnesses identified defendant as being involved in the altercation, surveillance footage showed defendant claiming he acted in self-defense, and the spent casing was directly correlated to the firearm recovered by police. Moreover, defendant did not possess a FOID card or an FCCL, and was under 21 years old at the time of the offense.

¶ 10    The State then argued that defendant posed a threat to Robinson and the community because there was a physical altercation, without weapons, between two people who knew each other and defendant got out of a car and shot Robinson. Defendant also had no legal authority to possess a firearm to use in self-defense. Moreover, days before the offense, defendant was placed on juvenile probation for mob action and aggravated battery with great bodily harm in case No. 23-JD-107—this was after defendant repeatedly sent threatening text messages to the victim of the aggravated battery and vandalized the victim's family member's car. In defendant's social history

from case No. 23-JD-107, defendant stated that he did not get into trouble, did not need to make any changes in his life, and he did not believe that his actions impacted others. Based on this, the State argued defendant did not accept responsibility for his actions and was not making any positive changes in his life, as evidenced by the present charged offenses. "[L]ess than a week later not only is he violating that probation by committing a new criminal offense, but he's committing that criminal offense with a gun."

¶ 11    Moreover, the State posited that there were no conditions short of detention that could be imposed on defendant, as he had demonstrated, by committing new violent offenses, that he cannot follow the rules of probation. The State also asserted that defendant could obtain weapons and "is not afraid to use them against other people," thus, there were no conditions the court could impose to stop that behavior. In fact, the court should not have to require defendant to surrender his firearms because he was not legally allowed to possess any. Electronic home monitoring (EHM), the State argued, would be insufficient here because defendant must be allowed out of his house for certain things and defendant could obtain another firearm and harm another person in the community.

¶ 12    In response, defense counsel asserted that defendant just graduated high school, had a support system present in court, was employed, and suffered from PTSD from a previous shooting. Regarding the charges, defense counsel argued there was an issue of self-defense, and it was unclear whether weapons were present in the initial altercation between Vega and Robinson. The State claimed that this position was not supported by the existing evidence. Nonetheless, counsel argued that the surveillance footage and defendant's statements to police showed that he believed he was in danger and acting in self-defense. Defense argued that EHM would mitigate his risk to the community, especially considering defendant's defense, his familial support, and employment.

¶ 13    Based on the verified petition, proffered evidence, and the dangerousness factors listed in section 110-6.1(g), the circuit court ordered defendant's continued detention. The court found that the proof was evident and presumption great that defendant committed detainable offenses—namely, aggravated battery with a firearm, aggravated discharge of a firearm, and three counts of AUUW. Specifically, the court credited Vega's statements that defendant was, initially, not involved in the altercation and that the fight did not involve weapons. The court concluded that nothing in the police synopsis indicated that defendant acted in self-defense, as he was not in fear for his life. The court also discounted defendant's claims that he had PTSD, which appeared to be self-diagnosed, and was not listed in his social history from case No. 23-JD-107. Most importantly, however, the court found that defendant was not legally able to possess a firearm and violated the terms of his probation by doing so.

¶ 14    The court concluded that defendant posed a real and present threat to the safety of Robinson, Robinson's child, and the community. The court specifically noted concern for the safety of Robinson's child, as that was the person Vega reportedly "had beef with." Additionally, the court noted that defendant demonstrated an inability to conform his conduct to the conditions of probation and the law. Finally, the court found that the threat that defendant posed could not be mitigated by less restrictive conditions, as defendant demonstrated a disregard for the court's orders, and EHM or GPS monitoring would not prevent defendant from possessing a firearm and harming another community member "just by happenstance, which is what happened here."

¶ 15    On May 23, 2024, defendant filed a motion for relief (Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024)), requesting that he be released with conditions. He challenged the circuit court's finding that the proof was evident and presumption great that he committed a detainable offense and its dangerousness finding. Specifically, defendant argued that the police synopsis, social history

investigation report, two no-contact orders, and juvenile synopsis sheet were insufficient to meet the threshold of clear and convincing evidence; the State improperly raised defendant's juvenile record and did not present any evidence that defendant posed a threat to any person or the community; the court improperly agreed with the State's assertion that no weapons were involved in the physical altercation; and the court did not properly consider defendant's affirmative defenses, his PTSD diagnosis, and his employment.

¶ 16     On June 26, 2024, defendant was charged by indictment with attempt first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)), aggravated battery with a firearm (*id*. § 12-3.05(e)(1)), and AUUW (*id*. § 24-1.6(a)(1)(3)(A-5) & (C)).

¶ 17     On August 28, 2024, the court heard defendant's motion for relief. The defense stood on its motion and requested that defendant be released on EHM to his grandmother's residence, since she was willing to supervise him. Defense counsel also anticipated the admission of the State's evidence of defendant's gang affiliation, gang tattoo, and social media photos depicting him holding a firearm. Counsel argued that the photos were from 2023, when defendant was affiliated with a gang; however, he no longer maintained that affiliation.

¶ 18     In response, the State argued that there was no indication defendant's grandmother would cooperate with law enforcement but, more importantly, EHM would not prevent defendant from frequenting certain locations or possessing firearms. The State asserted that the court correctly found defendant posed a risk to Robinson, his child, and the community and no conditions could mitigate that risk, as defendant fired a gun without a valid basis to act in self-defense. Additionally, defendant demonstrated his inability to follow the conditions of probation and the court's orders, where he committed new offenses only a few days after being sentenced to juvenile probation.

¶ 19    Moreover, the State argued that defendant was associated with a homicide that occurred on October 25, 2023, in Carpentersville. The State alleged that defendant, the victim, and a few others drove to a home, where they confronted an individual. Eventually, defendant and the others left the home, but a gunshot was fired into the air. Afterward, defendant and the others returned to the home in a vehicle and defendant was seen exiting the vehicle with something in his hand. An individual then shot at the vehicle, killing its occupant. When police arrived, defendant was seen handling a bag from which police recovered a firearm. The State asserted that there were "gang undertones" in this situation. During the investigation, defendant's phone was searched. Police recovered a photo of defendant holding a firearm and using gang hand signs and a picture of defendant's Spanish-Gangster-Disciple-killer tattoo. The State concluded by noting that this additional information shed light on defendant's dangerousness and the potential threat he posed to the community and the victims.

¶ 20    In reply, defense counsel noted that defendant was also injured during the October 25, 2023, incident and that he has never been charged with any involvement in the shooting.

¶ 21    After reviewing the facts of the case, exhibits, and arguments of the parties, the circuit court denied defendant's motion for relief. The court found that there was clear and convincing evidence that the proof was evident or presumption great that defendant committed attempt first degree murder, that he posed a real and present threat to the victim and the community, and that no conditions of release would mitigate this threat. As to the newly-presented evidence, the court did not consider the uncharged case. However, based on the totality of the other evidence, the court determined that nothing short of detention would protect society and the alleged victim from defendant because of his demonstrated inability to follow court orders.

¶ 22    On September 30, 2024, defendant timely appealed, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On November 8, 2024, defendant filed a notice in lieu of Illinois Supreme Court Rule 604(h) (eff. April 15, 2024) memorandum, and, on November 25, 2024, the State responded.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, defendant argues that the circuit court erred in finding that the State had proven that defendant committed detainable offenses and that he posed a threat to any person or the community. He requests that we reverse his detention order and remand for his release. We affirm.

¶ 25    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). Section 110-6.1(e) of the Code presumes that all persons charged with an offense are eligible for pretrial release. *Id.* § 110-6.1(e). However, a defendant's pretrial release may be denied if he or she commits a qualifying offense. *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* §§ 110-6.1(a)(1)-(7), (e)(2)), and less restrictive conditions would not avoid the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-

reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

¶ 26     We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  A decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id.*  Likewise, an abuse of discretion occurs when the court's decision is unreasonable. *Id.* "[W]e consider not just whether the ultimate result is within the bounds of reason, but also whether the trial court applied proper criteria to reach that result." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 12 (citing *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006)).

¶ 27     Initially, the State alleges that defendant forfeited his arguments, because, in his motion for relief, he failed to provide citations to the record and legal authority or develop legal arguments. As of April 15, 2024, Rule 604(h)(2) requires the appellant file in the circuit court a motion for relief that details the relief sought and the grounds for such relief, as a prerequisite to appeal. Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024). The form of the appellant's arguments, even if made only in the motion for relief, "must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024). After a prompt hearing on the motion, a notice of appeal may be filed at any time. Ill. S. Ct. R. 604(h)(2),(3) (eff. April 15, 2024). Whether counsel complied with a supreme court rule is a legal question that we review *de novo. People v. Tousignant*, 2014 IL 115329, ¶ 8.

¶ 28    Defendant's argument that the court erred in finding that the proof was evident and presumption great that he committed a detainable offense is sufficiently preserved. While not robust, the motion for relief provides sufficient legal argument, lists evidence relied on in the case, and cites legal authority. The fact that no record citations are used is not relevant to this argument because the exhibits are listed, and we find requiring record citations in a pretrial motion, and not an appellate filing, before the record is even compiled would frustrate the purpose of Rule 604(h).

¶ 29    As to defendant's dangerousness arguments, however, he stated the following:

"The State failed to meet its burden by proving by clear and convincing evidence that the defendant poses a real and present threat to the safety or [*sic*] any person or persons or the community based on the specific, articulable facts of the case.

    a. The State did not present any evidence that the defendant posed a real and present threat to any specific person or persons, instead relying on the argument that because the defendant was alleged to have engaged in the charged conduct that he was a danger to the complaining witness.

    b. The State improperly argued [defendant]'s juvenile record.

    c. The Court did not properly consider the affirmative defenses of Defense of Self and Defense of Another.

    d. The Court improperly agreed with the State's assertion that there were 'clearly no weapons' in the physical altercation, which [defendant] could not have known at the time.

    e. The court did not fully consider [defendant]'s PTSD, and minimized its effect referring to is as a possible 'self-diagnosis' despite no evidence of that.

f. Additionally, the State improperly argued people with PTSD were an increased danger to society.

g. The Court did not fully weigh [defendant] is employed at Groth's Manufacturing, a fulltime position, which he has held for five months."

We find that defendant's initial premise that the State failed to meet its burden of proving he was dangerous is supported with some citation to authority in the motion for relief; however, this overarching argument is not supported with facts, but rather, with additional legal sub-arguments. These sub-arguments, importantly, lack citation to relevant legal authority. Accordingly, defendant's overarching argument and sub-arguments are forfeited, as they both fall short of the requirements laid out in Rule 604(h). See also *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented (134 Ill. 2d R. 341(e)(7) [eff. Oct. 1, 2020]), and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation].").

¶ 30    Turning to the merits of defendant's non-forfeited argument, he alleges that the court erred in finding that the proof was evident and presumption great that he committed detainable offenses where it relied on the police synopsis, social history investigation report, two no-contact orders, and defendant's juvenile synopsis sheet. However, we have repeatedly held that the police synopsis constitutes reliable information upon which the State may rely in making its proffer and, further, that a synopsis alone may suffice to sustain the State's burden. See, *e.g.*, 725 ILCS 5/110-6.1(f)(2) (West 2022); *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. Here, the synopsis and exhibits related that a physical altercation broke out between Robinson and a heavy-set Hispanic male

flashing gang signs. During the altercation, another Hispanic male wearing a gray shirt and black jeans, later identified as defendant, shot Robinson in the abdomen/groin area. The court reasonably relied on the police synopsis and exhibits when it determined that the proof was evident and presumption great that defendant committed the charged offenses. Moreover, it was reasonable for the court to discount defendant's claims of self-defense because the police synopsis cast doubt on defendant's claims that he feared for his own life since Vega told police Robinson did not have a weapon during the initial altercation. Also, it was reasonable that the court discredited defendant's claim that he suffered from PTSD, which impacted his belief that lethal force was necessary, because defendant did not mention his diagnosis in case No. 23-JD-107, which was recently compiled and detailed defendant's social history.

¶ 31    In summary, the circuit court findings of fact were not against the manifest weight of the evidence, and its decision to grant the State's petition to deny defendant pretrial release was not an abuse of discretion.

¶ 32                                 III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 34    Affirmed.